Jerry and Margaret LINEBARGER *v.* George OWENBY
and Canal Wood Corporation

CA 01-1206                                          83 S.W.3d 435

Court of Appeals of Arkansas
Division IV
Opinion delivered September 4, 2002

*Morgan & tester, P.A.*, by: *M. Edward Morgan*, for appellants.

*Jones, Flynn & Zuerker, P.L.L.C.*, by: *R. Scott Zuerker* and *Kendall B. Jones*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellants Jerry and Margaret Linebarger sued their neighbor, appellee George Owenby, and also sued Canal Wood Company, the company that Owenby hired to cut timber, for the wrongful cutting of trees on their property. The trial judge found in favor of appellants and awarded them $5,000, which represented the difference in the value of their land before and after the trees were cut; $1,081.60 for the trees that had been removed; and $643.50 in clean-up costs. Appellants argue on appeal that the trial judge erred in not awarding them the replacement value of the trees; in not awarding them attorney fees; and in failing to treble the damage award. On cross-appeal, appellees argue that the judge erred in finding that they failed to obtain a survey prior to cutting the timber. We affirm on direct appeal, and we conclude that the cross-appeal is moot.

Appellee George Owenby's property lies south of a heavily wooded, thirty-acre tract owned by appellants. Appellants purchased the northern twenty acres of their property in 1976 and built a weekend cabin thereon. The southern ten acres were purchased in 1993 to serve as a buffer between their cabin and neighboring lands. On January 1, 1998, Owenby sold the timber on his tract to appellee Canal Wood Corporation. Canal began cutting in the fall of 1998 and, in the process, cut 329 trees from the southernmost part of appellants' land. According to Jerry Linebarger, he had tried to tell Owenby for a number of years that a 1987 survey upon which Owenby relied to establish his boundary was incorrect and that there was a more recent survey availa-

ble.  As late as December 1997, when Owenby told Linebarger he was thinking of selling his timber, Linebarger reminded Owenby of the boundary problem and asked Owenby to call him before proceeding.  Nevertheless, Owenby made his contract with Canal, and, when Canal noticed some evidence of a boundary different than the one Owenby had indicated, Owenby provided Canal with the 1987 survey.  In reliance thereon, Canal marked the acreage in such a manner that trees were mistakenly cut on appellants' property.

Appellants sued Owenby and Canal on October 29, 1998, in Van Buren County Chancery Court, alleging that Owenby and Canal trespassed on their property and destroyed trees that had been used for shade and beauty.  Damages were sought for the "amount that would allow Plaintiffs to replace the trees," for attorney fees and costs, and for "all other relief to which they might be entitled."  The case went to trial on January 18, 2001, and the judge viewed the reports and heard the testimony of three experts regarding the amount of damages that had been suffered by appellants.  One expert, William Kelly, testified that the stumpage value of the cut trees was $1,081.60 and that it would cost $643.50 to prepare the site for re-planting.  Another expert, real estate appraiser Wayne Coates, testified that the market value of appellants' property was $68,000 before the cutting and $62,000 afterward (which amount included $3,000 in clean-up costs).  A third expert, Alfred Einert, placed a value on every tree that had been cut and determined the total value of the trees to be $44,702.  This was the amount sought by appellants as damages.

On May 3, 2001, the trial judge issued a letter ruling in favor of appellants.  He determined that Canal had failed to obtain a survey prior to cutting the trees and had trespassed on the appellants' land as the result of Owenby's intentional failure to disclose the true circumstances surrounding the ownership of the property.  However, the judge found that the $44,702 damage figure testified to by Alfred Einert was disproportionate in relation to the fair market value of the land.  He therefore awarded appellants $5,000 for reduction in value of the land, based on Wayne Coates's testimony, plus $1,081.60 stumpage value and $643.50 in clean-up

costs, based on William Kelly's testimony.[1] He also declared that appellants should be awarded attorney fees, but in a subsequent letter ruling, he reluctantly concluded that the law did not permit him to either award attorney fees or treble the damages. A final order was entered on July 19, 2001, and, in addition to including the abovementioned findings, it awarded Canal judgment over against Owenby.

■ For their first argument on appeal, appellants contend that the trial judge erred in not awarding them the $44,702 replacement value of the trees. Arkansas courts have recognized that when ornamental or shade trees are injured, the use made of the land should be considered and the owner compensated by damages representing the cost of replacing the trees. *White River Rural Water Dist. v. Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992); *First Elec. Coop. Corp. v. Charette*, 306 Ark. 105, 810 S.W.2d 500 (1991); *Revels v. Knighton*, 305 Ark. 109, 805 S.W.2d 649 (1991); *Worthington v. Roberts*, 304 Ark. 551, 803 S.W.2d 906 (1991); *Fleece v. Kankey*, 77 Ark. App. 88, 72 S.W.3d 879 (2002); *Bowman v. McFarlin*, 1 Ark. App. 235, 615 S.W.2d 383 (1981). *See also* Dan Dobbs, *Dobbs Law of Remedies* § 5.3(2) (2d ed. 1993). However, fact situations may arise in which recovery of the replacement cost of trees would yield a result grossly disproportionate to the fair market value of the land and thus would be an inappropriate measure of damages. *First Elec. Coop. Corp. v. Charette, supra. See also* Howard Brill, *Arkansas Law of Damages* § 30-3 (3d ed. 1996). The evidence in each case determines what measure of damages is to be used. *See White River Rural Water Dist. v. Moon, supra.*

■ In the case at bar, the judge agreed with appellants that their trees had been used for screening and shade, and he thus gave due consideration to the replacement measure of damages. However, he found that most of the trees cut were behind and over the

---

[1] The judge remembered Coates's testimony to be that the before-value of the land was $67,000 and the after-value was $62,000. We also note that Arkansas law provides that, when damages are awarded for the wrongful cutting of timber, the trial judge may award the diminution in value *or* the stumpage value, not both as was done in this case. However, the damage award is not challenged in that regard on appeal, so we do not address the propriety of it.

crest of a hill from appellants' cabin, which tended to reduce the harm they suffered. He also found that the replacement cost of the trees would be disproportionate in relation to the fair market value of the land. He therefore declined to award appellants the $44,702 they sought.

We cannot say that the trial judge abused his discretion in making the damage award.[2] Although he recognized that an award of replacement value might be possible, he declined to use that measure of damages because: 1) the cut trees were behind and over a crest from the cabin; and 2) the replacement value would be disproportionate to the land value. The location of the cut trees in relation to the cabin is a legitimate factor to consider. The trees provided only minimal shade, ornamental, or landscaping value to the appellants' residence. Further, if the full replacement value of $44,702 had been awarded for trees cut on 4.29 acres, appellants would have received 67% of the value of the 30 acres as a whole (including the cabin); further, such an award would exceed by over $43,000 the stumpage value of the trees cut.

Appellants point out that in *Charette, supra,* the supreme court permitted an award of $8,300 for replacement of twenty-one trees on land that was worth, at most, $24,000. The court stated:

> In the present case, the evidence showed that the appellant had destroyed a relatively small number of hardwood trees. The plaintiffs had intentionally left these trees growing along the road-side because they wanted a beautiful tree-lined road by their home. In effect, the trees that First Electric destroyed were part of the landscaping . . . . Under these facts, we cannot say that the trial court abused its discretion in instructing the jury on the replacement measure of damages. Certainly we can envision fact situations in which the recovery of the replacement cost of trees would yield a result grossly disproportionate to the fair market

---

[2] The standard of review on this issue is not clear. It appears that a review of the trial court's choice of damage measures is better suited to the abuse-of-discretion standard, as was used by the supreme court in *Charette, supra. But see Fleece v. Kankey, supra,* in which this court said that the trial judge's disregard of the replacement measure of damages was "clearly erroneous." In either case, some deference should be accorded to the trial court's decision.

value of the land and would, therefore, be an inappropriate measure of damages, but this is not such a case.

*Charette*, 306 Ark. at 107.

The case before us is distinguishable from *Charette*. There, the amount ultimately awarded was about 35% of the land value. Further, a small number of trees specifically used for landscaping were destroyed in *Charette*, while in this case, a large number of timber-like trees with little landscape or ornamental value were cut. Finally, the supreme court in *Charette* looked to whether the trial court had abused its discretion in making the award. The supreme court concluded, as we do here, that no abuse of discretion occurred.

■ Our courts have said that the evidence in each case will determine the proper measure of damages. *White River Rural Water Dist. v. Moon, supra.* Given the particular evidence in this case, and affording the trial judge the same deference that was afforded in *Charette*, we affirm on this point.

■ ■ Next, appellants argue that the trial court should have awarded them attorney fees. As a general rule, attorney fees are not allowed in Arkansas unless expressly authorized by statute. *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001). *See also Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001) ("Arkansas follows the American Rule that attorney's fees are not chargeable as costs in litigation unless permitted by statute."). There is no statute that authorizes an award of attorney fees under the circumstances in this case. Appellants cite an exception where the plaintiff has created or augmented a common fund or where assets have been salvaged for the benefit of others as well as himself (as in a shareholder derivative suit). *See Millsap v. Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986). However, there was no common fund or conglomeration of assets created in this case. Appellants also cite *Damron v. University Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402 (1988), in which attorney fees were allowed, despite the fact that the statute involved in that case only allowed an award of "expenses." However, in *Damron*, certain bylaws agreed to by the parties provided for collection of attorney fees. Finally, appellants cite Ark. Code Ann. § 18-60-102(a)

(1987), which provides that, if a person cuts down another's tree, he may be liable for treble damages "with costs." However, we have held that a statutory authorization for the award of costs does not include attorney fees. *Roberts v. Feltman*, 55 Ark. App. 142, 932 S.W.2d 781 (1996). Given these authorities, we agree with the trial court that attorney fees were not awardable in this case.

Appellants' final argument is that the trial judge erred in not trebling the damage award. The judge found that the wrongful cutting in this case occurred through Owenby's intentional conduct. In cases of intentional wrongdoing involving the cutting of trees, the victim may recover treble damages. *See Revels v. Knighton, supra*; Ark. Code Ann. § 18-60-102(a) (1987). However, despite his finding of intentional conduct, the judge declined to award treble damages in this case, based on the idea that a court of equity cannot award treble damages. *See Augusta Cooperage Co. v. Bloch*, 153 Ark. 133, 239 S.W. 760 (1922); *Gardner v. Robinson*, 42 Ark. App. 90, 854 S.W.2d 356 (1993).

We uphold the trial judge's decision, although for a different reason.[3] Appellants did not include a prayer for treble damages in their pleading, nor does the record reveal that they notified appellees at trial that they would be seeking exemplary damages. Further, there is no evidence that the issue was tried with the express or implied consent of the parties. In a similar situation involving double damages, the supreme court held that a defendant should be given adequate notice of the remedy he will be confronting, and the court reversed a trial judge's decision to award double damages on the day of trial, without them having been pled by the plaintiff. *See Hackelton v. Larkan*, 326 Ark. 649, 933 S.W.2d 380 (1996). Likewise, in this case, an award of treble damages would have been inappropriate in the absence of appellants pleading for them or the issue being tried with the express or implied consent of the parties.

The remaining issue is presented by appellees on cross-appeal. They challenge the trial judge's finding that they did not

---

[3] We may affirm the trial court if it reaches the correct result, without regard to the reasoning it employed. *See Hawks Enters., Inc. v. Andrews*, 75 Ark. App. 372, 57 S.W.3d 778 (2001).

obtain a survey prior to cutting the trees. Arkansas Code Annotated section 15-32-101 (Repl. 2000) requires that, before any person cuts timber, he must procure a survey "unless the land has been surveyed and the boundaries thereof ascertained and known." Appellees are correct that a survey had been obtained before the trees were cut (albeit an incorrect survey), yet we conclude that the trial judge's finding to the contrary has no bearing on the outcome of the case. The failure to obtain a survey would be relevant to the cutter's state of mind, *i.e.*, whether his conduct was intentional or knowing. *See generally Parker v. Fenter*, 216 Ark. 398, 225 S.W.2d 940 (1950). Because we have held that no exemplary damages may be awarded in this case, the appellees' state of mind as evidenced by whether a survey was procured, has no practical, legal effect on the case. Therefore, we consider this point moot.

Affirmed on direct appeal; cross-appeal moot.

STROUD, C.J., and ROBBINS, J., agree.