SOUTHWESTERN BELL TELEPHONE COMPANY *v.* Kevin
GARNER, Individually and d/b/a Willow Springs Excavating

CA 03-263                                      125 S.W.3d 844

Court of Appeals of Arkansas
Division II
Opinion delivered October 22, 2003

*J. Slocum Pickell*, for appellant.

*Mathews, Sanders & Sayes*, by: *Doralee I. Chandler* and *Roy Gene Sanders*, for appellee.

Robert J. Gladwin, Judge. Southwestern Bell Telephone Company filed suit in Benton County Circuit Court against Kevin Garner, individually, and d/b/a Willow Springs Excavating, alleging negligence after one of appellee's employees damaged its fiber-optic telephone cable. Appellant sought $48,553.65 in damages related to the repair of the cable and loss of use. The trial court denied appellee's motion for a directed verdict on the issue of liability but granted his motion on the issue of loss of use. The liability issue was submitted to the jury resulting in a verdict in favor of appellee. Appellant raises two points on appeal to this court: (1) that the jury's verdict should be reversed because appellant presented sufficient

evidence to support its claim of negligence; and (2) that the trial court erred as a matter of law in finding that loss of use is not an appropriate element of damages. We affirm.

Larry Stroud, appellant's construction manager, testified that on April 9, 2001, he was contacted because there had been a fiber failure at a construction site near the intersection of SW 30th Street and J Street in Bentonville. Stroud testified that appellee's employee, who was operating a front-end loader, had dug down to a fiber-optic cable and severed it. Stroud later admitted that it was appellant's own employees who had dug around the place where the cable had been cut in order to assess the damage. Stroud also indicated that only the frayed end of the cable was visible when he arrived at the site and that the ground was level around the cable. Stroud insisted, however, that the cable had been buried at least twenty-eight to thirty-two inches deep.

Kevin Garner, the owner of Willow Springs Excavating, testified that he sent Bill Scallorn to the site with a front-end loader to remove the loose top soil that had been piled up at the location. He stated that he did not call One Call Center to locate the cable prior to working on the site that day even though Arkansas law requires contacting it prior to performing excavation activities. Garner stated that even if he had called One Call Center, he would not have done the job differently because he was not "excavating" as it is defined. He stated that his employee was not digging but was only hauling away the dirt piled on top of the existing grade. Further, he stated that he assumed that the cable would be buried at a certain depth. Garner acknowledged that his employee had cut the cable. He also acknowledged that the bucket on the front-end loader would "drift" downward, but he indicated that it would only drift a couple of inches into the ground.

Johnny Carter, appellant's manager of risk-management services, testified as to the costs that appellant incurred as a result of its damaged cable. He stated that the hourly labor rate was $84.64; that 350 feet of cable was replaced at the cost of $11.77 per foot; that two hand holes were put in at $400.78 apiece; that two closures that went into each hand hole were $728.74; and that a contractor was hired to dig up the other end of the cable which cost appellant $1,064.75. Carter also claimed $28,844.64 for loss of use and explained in some detail how he arrived at that figure. In addition, Carter testified that the phone lines were down for six and one-half hours that day but that he had charged for a full day.

Further, Carter stated that, considering the amount of voltage on the cable in question, the National Safety Code requires that it be a minimum of twenty-four inches below the ground. Carter testified that alternate phone service was not made available to customers and that customers did not get any credit on their phone bill reflecting the interruption of service. Carter stated that, in other words, appellant did not lose any money as a result of its damaged cable.

Michael Gartrell, manager of cable maintenance for appellant, testified that when he arrived at the site, a hole had been dug and that he and other employees kicked around in the dirt to find the cable and pull it out of the hole. He then conceded that they had used shovels to uncover the cable. Gartrell testified that the cable was buried at least two feet underground. He surmised that the cable had been hooked by the front-end loader and that the cable had been stretched and pulled close to the surface. Gartrell testified that a front-end loader is not for digging but that the bucket has "teeth" that stick into the ground and can scoop out a hole. Gartrell stated that the hole was about three- or four-feet wide and conceded that the bucket on the front-end loader might actually be eight-feet wide.

After appellant rested its case, appellee moved for a directed verdict. The trial court denied the directed-verdict motion on the issue of liability but granted a partial directed verdict on the issue of loss of use. Appellee then presented Bill Scallorn's testimony.

Scallorn, appellee's employee who operated the front-end loader that day, testified that he was removing piles of dirt by running the bucket of his front-end loader along the ground. He stated that he was not digging and was not changing the grade of the ground. Scallorn, who acknowledged cutting the cable, testified that he saw the cable sticking out of the ground and that the ground was level around it. He stated that he contacted his employer and left the site to empty his dump truck that was full of dirt. Scallorn stated that when he got back to the site, appellant's employees were there digging and exposing the cable. He maintained that the front-end loader could not have dug a hole the size of the one present in photographs that were introduced into evidence because the bucket was about eight-feet wide and any hole the front-end loader could have dug would have been spread back some distance. He stated that he would have dug only one or two inches into the dirt simply because the ground was not level.

Neither party made any motions after appellee rested its case. After deliberation, the jury returned a verdict for appellee. Appellant filed a timely notice of appeal.

Appellant argues on appeal that no reasonable person could conclude that appellee was not "excavating" as that term is defined at Ark. Code Ann. § 14-271-102(4) (Repl. 1998). Furthermore, appellant contends that appellee was negligent in not having contacted One Call Center to locate the phone line, which it was required to do by law, and that this conduct proximately caused appellant's cable to be cut.

■ Appellant's sufficiency argument is not preserved for review. Arkansas Rule of Civil Procedure 50(e) (2000) provides that "when there has been a trial by jury, the failure of a party to move for a directed verdict at the conclusion of all the evidence, because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict." In *Mikel v. Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994), plaintiff Doris Mikel had filed a suit in ejectment against defendant Hubbard Marine Services, Inc., and the jury returned a general verdict for the defendant. On appeal to the supreme court, Mikel argued that the jury's verdict was "not supported by a preponderance of the evidence." The supreme court held that the plaintiff's claims regarding the sufficiency of the evidence were barred because Mikel had not moved for a new trial and had not moved for a directed verdict at the conclusion of all the evidence. The supreme court, citing Ark. R. Civ. P. 50(e), concluded that because the sufficiency of the evidence was never raised in the trial court by the plaintiff, she could not raise it for the first time on appeal. We must reach the same conclusion in the case at bar because appellant never challenged the sufficiency of the evidence at any time in the trial court. Accordingly, we affirm the jury's verdict.

■ Next, appellant contends that the trial court must have confused actual or out-of-pocket damages with damages related to loss of use because it should recover damages to compensate for its loss of its property right. In view of our affirmance of the jury's verdict that appellee's conduct did not constitute negligence, we

do not address the issue of damages.[1] *See Miller v. Jasinski,* 17 Ark. App. 131, 705 S.W.2d 442 (1986).

Affirmed.

PITTMAN and BAKER, JJ., agree.

---

[1] On June 5, 2003, the Arkansas Supreme Court handed down *Southwestern Bell Telephone Company v. Harris Company of Fort Smith,* 353 Ark. 487, 109 S.W.3d 637, holding that Arkansas law does not recognize "loss-of-use" damages for personal property other than motor vehicles.