Clay D. KING and Patty A. King *v.*
Sandra POWELL

CA 03–451 148 S.W.3d 792

Court of Appeals of Arkansas
Division II
Opinion delivered February 25, 2004

[Rehearing denied March 31, 2004.]

*Sawyer and Cripps*, by: *Stephen P. Sawyer*, for appellants.

*Law Offices of Charles M. Kester, PLC*, by: *Charles M. Kester*, for appellee.

Larry D. Vaught, Judge. This is an interlocutory appeal brought under Ark. R. Civ. P. 54(b). Appellee Sandra Powell sued her neighbor, appellant Clay King, for trespass, seeking damages for his destruction of trees and removal of dirt along an old trail on her property. Mr. King and his wife, Patty King, filed a counterclaim against Ms. Powell, claiming a prescriptive easement across her property. Both Mr. King and Ms. Powell alleged that they had entered into an agreement whereby Mr. King would make the trail passable in exchange for giving Ms. Powell access to Beaver Lake. The jury returned a verdict awarding damages to Ms. Powell and finding no prescriptive easement across her land. The jury also found that Mr. King had breached his agreement to give Ms. Powell access to the lake. The trial court granted the Kings' motion for judgment notwithstanding the verdict on their prescriptive easement claim. Mr. King appeals from the award of damages against him, and Ms. Powell argues on her cross-appeal that the trial court erred in granting the Kings' motion for judgment notwithstanding the verdict on their prescriptive-easement claim. We affirm on the direct appeal and reverse on the cross-appeal.

### Procedural and Factual History

Ms. Powell purchased her property in 1990, and lived there from 1991 until 1997. The road in dispute runs along the south half of her property and crosses a ravine. When Ms. Powell purchased her land, the culvert over the ravine was no longer passable, and

small trees had grown up on the trail, which appeared as if it had not been used for many years. In 1997, the Kings purchased property adjacent to Ms. Powell. There is no dispute that Mr. King and Ms. Powell entered into an agreement whereby she permitted him to remove "three or four trees" to make the roadway passable in exchange for giving her access to the lake. However, Mr. King's changes to her property were far in excess of what Ms. Powell claimed she had agreed upon. One hundred twenty-nine dead trees were piled on Ms. Powell's property, and nine hundred cubic yards of dirt were removed, along with the vegetation. Ms. Powell notified Mr. King that he did not have permission to treat her property in that manner. Even though she demanded that he stop his work on several occasions, he continued to proceed, even after she filed her trespass complaint. The Kings use this roadway for access to their property.

Ms. Powell filed a trespass complaint against Mr. King[1] on April 10, 1998, seeking damages of over $25,000 and treble damages as provided in Ark. Code Ann. § 18-60-102 (Repl. 2003). In an amended complaint, Ms. Powell included a request for punitive damages. In response, Mr. King affirmatively raised waiver, estoppel, and adverse possession and alleged that his actions had been with Ms. Powell's permission, in accordance with their agreement. Mr. and Mrs. King alleged in a counterclaim that they had acquired a prescriptive easement across the road.

At trial, the verdict was rendered on interrogatories. The jury found that Ms. Powell had proven that Mr. King trespassed on her property, damaging or destroying trees and displacing or removing stone or soil. It also found that Mr. King did not establish his defense of estoppel. The jury awarded Ms. Powell $5,000 for her trees and $4,950 for the soil and stone. The jury also found that Mr. King's actions were willful or intentional and assessed punitive damages against him in the amount of $25,000. The jury further found that Ms. Powell had proved that Mr. King failed to provide a lake-access easement to which she was entitled by the terms of their agreement. It also found that the Kings had failed to establish their prescriptive-easement claim. The Kings moved for judgment notwithstanding the verdict on their counterclaim. In response, Ms. Powell argued that they had failed to preserve the issue.

---

[1] Ms. Powell originally sued Mrs. King but later nonsuited that claim.

The trial court entered judgment of $34,950 ($25,000 in punitive damages and $9,950 in actual damages) on the verdict for Ms. Powell, stating that she had elected to recover actual and punitive damages, rather than treble damages. It also awarded her attorney's fees and completed a certification pursuant to Ark. R. Civ. P. 54(b) for an interlocutory appeal, stating:

> [T]he remedy for the defendant Clay King's breach of a contract to provide a lake access easement is distinct from and unrelated to the issues resolved at the trial of this cause which are addressed herein, that the fashioning of a remedy for the Defendant Clay King's breach of a contract to provide a lake access easement will require further proceedings before the court in equity, and the costs to the parties and the cloud over the title of the subject property will ... therefore be minimized if these proceedings on the remedy for Defendant Clay King's breach of a contract to provide a lake access easement do not unnecessarily delay proceedings on the issues already resolved; and that there is no just reason to delay entry of judgment.

Mr. King then moved for judgment notwithstanding the verdict. The trial court entered an order denying Mr. King's motion in all respects except for the issues concerning the prescriptive easement and attorney's fees. It stated:

> [T]here was no evidence to substantiate the jury's finding in regard to this [prescriptive easement] issue, and the facts presented did, in fact, establish an easement by prescription across [Ms. Powell's] land, unless abandoned. That a new trial should [be] granted on the issue of whether or not the easement by prescription was abandoned, because said issue was not decided.... [A]ll other provisions of this court's original judgment, not modified herein, shall remain in full force, and effect including the Rule 54B findings and certificate, and including the finding that the remedy for Clay D. King's breach of contract will require further proceedings in this court ....

From that order, Mr. King entered his notice of appeal and Ms. Powell filed a notice of cross-appeal.

### Direct Appeal

#### Damages

For his first point on appeal, Mr. King argues that the trial court erred in denying his motion for directed verdict on the issue

of damages.[2] He asserts that the replacement value of the trees, on which Ms. Powell based her evidence, was not the proper measure of damages in this case. Instead, he argues, the proper measure was the difference in the value of the land before and after the occurrence, and no evidence of difference in value was introduced. Mr. King argues that these trees were ordinary trees on a steep hillside, on the far south end of Ms. Powell's property, and not near her home. He also contends that the amount of damages she claimed ($29,050 for the trees and $4,950 for the soil) was grossly disproportionate to the overall value of her property ($39,500).

A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing the denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 129 S.W.3d 324 (2003). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without having to resort to speculation or conjecture. *Id.* When determining the sufficiency of the evidence, the appellate court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* A motion for a directed verdict should be denied when there is a conflict in the evidence or when the evidence is such that fair-minded people might reach different conclusions. *Fayetteville Diagnostic Clinic, Ltd. v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001). Under those circumstances, a jury question is presented and a directed verdict is inappropriate. *Id.* It is not this court's province to try issues of fact; it simply examines the record to determine if there is substantial evidence to support the jury verdict. *Id.*

The jury instruction given on this issue correctly stated the law as follows:

> If the answer to an interrogatory requires you to assess damages against Mr. Clay King in favor of Linda Powell, you will do so in the following manner:

---

[2] Insofar as appellant's argument may challenge the jury instruction on damages, that argument is not preserved because he did not object to the instruction and affirms in his reply brief that he does not challenge the instruction.

1. If you find that Ms. Powell's intended use of the damaged or destroyed trees was for ornamental or shade purposes, then you will award damages equal to the value of the damaged or destroyed trees, if any, plus the cost of replacing stone or soil displaced or removed, if any.

2. Otherwise, you will award damages equal to the difference in the fair market value of Ms. Powell's property before and after the trespass.

In *Worthington v. Roberts*, 304 Ark. 551, 803 S.W.2d 906 (1991), the supreme court adopted the rule that, when ornamental or shade trees are injured, the use made of the land should be considered and the owner compensated by damages representing the cost of replacement of the trees. The court explained: "In some instances, for example, tortious destruction of trees might increase its *market* value but decrease the value of the land for the *use* made of it by its owner." 304 Ark. at 557, 803 S.W.2d at 910 (emphasis in original). The court held, however, that the evidence in each case will determine whether an instruction on the difference in the value of the land before and after an occurrence or one on the cost of restoration should be given. *Accord White River Rural Water Dist. v. Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992); *Revels v. Knighton*, 305 Ark. 109, 805 S.W.2d 649 (1991); *Fleece v. Kankey*, 77 Ark. App. 88, 72 S.W.3d 879 (2002); *Bowman v. McFarlin*, 1 Ark. App. 235, 615 S.W.2d 383 (1981). *See also Linebarger v. Owenby*, 79 Ark. App. 61, 83 S.W.3d 435 (2002). In *First Electric Cooperative Corp. v. Charette*, 306 Ark. 105, 810 S.W.2d 500 (1991), the supreme court affirmed the trial court's use of the replacement cost as the basis for determining damages for the unauthorized destruction of ornamental trees, even though the cost of replacing the trees was high compared to the value of the land.

From these decisions, the following rules can be taken: the trial court's decision as to the proper measure of damages in such a case will not be reversed unless it abused its discretion; when ornamental or shade trees are injured, the use of the land should be considered and the owner compensated by damages representing the cost of replacement of the trees; the evidence in each case will determine whether an instruction on the difference in the value of the land before and after the occurrence or one on the cost of restoration should be given.

The trial court denied Mr. King's motion for directed verdict because Ms. Powell had produced substantial evidence that her use of this property was recreational in nature and that the trees had aesthetic value. At trial, Ms. Powell testified that, after moving from Memphis, she had bought this property because she wanted to live in a rural setting. She said that she preferred the area around the road, because it was a serene and lovely wooded place to walk her dogs and to be alone. She stated that, when Mr. King destroyed the trees, she had been walking along the path about once a week.

Ms. Powell's expert witness, Dr. Alfred Einert, a certified arborist and landscape architect, testified that he found 129 cut trees that had been bulldozed into piles on her property, including 53 red oaks, 30 dogwoods, 9 white oaks, 28 hickories, 4 sycamores, 2 service berries, 1 Chinese elm, 1 sawtooth oak, and 1 hophornbean. He said that about 10 trees that were still standing were damaged and in danger. He testified at great length about his methodology and the underlying principles on which it was based. He also stated that he had allowed for the fact that these trees had less value in this rural setting than they would have in "someone's home in downtown Bentonville." He set the cut trees' replacement value at $29,050.50, and the damages to the standing trees at $2,845.47. He also testified that about 900 cubic yards of soil, valued at $4,950, had been removed.

■ We believe that Ms. Powell presented substantial evidence of her recreational use of this property, which was sufficient to survive a motion for directed verdict. In so holding, we also note that the actual damages awarded ($9,950) were not grossly disproportionate to the evidence that Mr. King presented regarding the property's value. Accordingly, we affirm on this point.

### Treble or Punitive Damages

■■ Mr. King argues in his second point that the jury's finding of wrongful conduct, on which the award of punitive damages was based, is not supported by substantial evidence. Ms. Powell elected to take the punitive damages awarded by the jury rather than the treble damages authorized by Ark. Code Ann. § 18-60-102. Punitive damages may be awarded when there is evidence that a defendant knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of the consequences, from which malice could

be inferred. *D'Arbonne Constr. Co. v. Foster*, 354 Ark. 304, 123 S.W.3d 894 (2003); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). In law, malice is not necessarily personal hate; it is, rather, an intent and disposition to do a wrongful act greatly injurious to another. *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002). Malice is also defined as the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. *Id*.

. We believe that Ms. Powell presented more than enough evidence to support the jury's award of punitive damages. Mr. King did not deny that Ms. Powell had given him permission to remove only three or four trees. Ms. Powell testified that, after she discovered that he had done much more than that, she revoked her permission and ordered him to stop the work. She stated, however, that Mr. King ignored her entreaties to stop and continued his efforts, even after she filed this lawsuit. She also said that Mr. King visited her at her home in Springdale on two occasions, during one of which he falsely claimed to have had the property surveyed and stated that the work being done was on his own property. She testified that both meetings resulted in heated arguments and that Mr. King was asked to leave. She also said that Mr. King installed a gate on her property and that he ignored her request for a key. She further stated that her no-trespassing signs and flags on her property were repeatedly taken down. In fact, she testified that Mr. King had even placed a no-trespassing sign on *her* property. Accordingly, we also affirm on this point.

### Estoppel

In his third point, Mr. King argues that the trial court abused its discretion in refusing to give his proposed instruction on estoppel. He admits that Instruction No. 10, which the court gave on this issue, was "technically correct" but argues that it was "stilted and confusing particularly when considered in conjunction with Instruction No. 12," which read as follows:

> When I use the expression "willfully" or "intentionally," I mean a course of action which shows an actual or deliberate intention of wrongdoing, or which, if not intentional, shows an utter indifference to or conscious disregard for the right of others, with evil design and in bad faith.

Mr. King argues that Instruction No. 12 placed a higher burden on him to prove estoppel. Although he cites no case that supports this argument, he lists several decisions dealing with estoppel that did not specifically define the term "willful."

The elements of equitable estoppel are these: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; (4) the party asserting estoppel must rely on the other's conduct to his detriment. *Brown v. Brown*, 83 Ark. App. 217, 125 S.W.3d 840 (2003). A party who by his acts, declarations, or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994).

We do not believe that the trial court abused its discretion in refusing to give Mr. King's proffered instruction. The instruction given by the trial court correctly stated the law. It provided:

> Clay King claims the defense of estoppel and has the burden of proving each of four essential propositions by a preponderance of the evidence:
>
> First, that Sandra Powell engaged in some act, declaration, or admission, or failed to act or speak when she should have done so; and
>
> Second, that her speech, action, or failure to act or speak was with design or willful disregard of others; and
>
> Third, that her speech, action or failure to act or speak induced or misled the defendant Clay King in his conduct or dealings; and
>
> Fourth, that Clay King would not have entered into this conduct or dealings but for this misleading influence.
>
> If you find from the evidence in this case that each of these propositions has been proved, then you should answer "yes" to the

appropriate interrogatory; but if, on the other hand, you find from the evidence that any of these propositions has not been proved, then you should answer "no" to the appropriate interrogatory.

Mr. King has cited, and we can find, no authority to support his argument that the definition of willfulness is different in the context of an alleged estoppel from the one given in Instruction No. 12. We therefore hold that the trial court did not abuse its discretion in this regard.

### Cross-Appeal

In her cross-appeal, Ms. Powell argues that the trial court erred in granting the Kings' motion for judgment notwithstanding the verdict as to the prescriptive easement because they did not move for a directed verdict at the close of all of the evidence on this ground. She is correct.

A motion for a directed verdict at the close of all the evidence is a condition precedent to moving for a judgment notwithstanding the verdict. Ark. R. Civ. P. 50(b); *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993). A motion for judgment notwithstanding the verdict is technically only a renewal of the motion for directed verdict made at the close of the evidence. *Conagra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000). A motion for judgment notwithstanding the verdict can be made only upon grounds that were raised during the trial. *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002). A party's failure to move for a directed verdict at the conclusion of all of the evidence because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. Ark. R. Civ. P. 50(e).

The Kings argue that Rule 50 did not apply and that they did not have to move for directed verdict on this issue, because it was asserted in their counterclaim, on which they had the burden of proof. They assert: "To buy appellee's argument would mean that one would have to move for a directed verdict after putting on his own case...." The rule, however, makes no such distinction. It simply requires that such a motion be made, at the close of all of the evidence, regardless of the identity of the party. In short, even a plaintiff can move for a directed verdict, although such a motion will rarely succeed. *See* David Newbern & John Watkins, *Arkansas Civil Practice and Procedure* § 27-3 (3d ed.

2002). In *Mikel v. Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994), the supreme court held that the plaintiff/appellant's claims regarding the sufficiency of the evidence were barred because she had not moved for a directed verdict at the close of all of the evidence, citing Ark. R. Civ. P. 50(e). *Accord Southwestern Bell Tel. Co. v. Garner*, 83 Ark. App. 226, 125 S.W.3d 844 (2003). We therefore reverse the trial court's granting of a judgment notwithstanding the verdict on the prescriptive-easement claim because the Kings failed to preserve their right to make this motion.

Even if we were to decide this issue on the merits, the result would be the same, because the jury's verdict on the Kings' counterclaim was supported by substantial evidence. A trial court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the jury verdict and the moving party is entitled to judgment as a matter of law. *Fayetteville Diagnostic Clinic, Ltd. v. Turner, supra.*

The person who asserts an easement has the burden of proving its existence, *Riffle v. Worthen*, 327 Ark. 470, 939 S.W.2d 294 (1997), and that there has been adverse, not permissive, use of the land in question. *Carson v. County of Drew*, 354 Ark. 621, 128 S.W.3d 423 (2003). Although Arkansas does not have a statute setting forth the length of time for the ripening of a prescriptive easement, for many years the supreme court has considered the period for acquiring a prescriptive right-of-way as analogous to the statutory seven-year period for the acquiring of title by adverse possession and has held that both require seven years. *Neyland v. Hunter*, 282 Ark. 323, 668 S.W.2d 530 (1984). Unlike adverse possession, however, prescriptive use need not be exclusive. *Id.*

One asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Manitowoc Remfg., Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991). Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Id.* The determination of whether the use of a roadway is adverse or permissive is a question of fact. *Johnson v. Jones*, 64 Ark. App. 20, 977 S.W.2d 903 (1998). Once gained, a prescriptive easement may be abandoned by more

than seven years of nonuse. *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001).

Ms. Powell presented evidence from which the finder of fact could infer that the minimal use to which others put the roadway thirty to forty years ago was not openly adverse or hostile to the original owner's rights. Obviously, the Kings did not use the roadway for seven continuous years; therefore, their claim was dependent on proving that their predecessors in title established a prescriptive easement and did not abandon it. Although they presented the testimony of some of their predecessors, their testimony demonstrated only occasional, limited use and no maintenance of the road on their part. Karl Weiss, who has lived in this area since 1972, testified that he has often walked along this road, which he described as a "jungle trail" on which a Jeep could barely travel. He stated that he never saw any vehicles use it or any evidence that they had done so. Ms. Powell also introduced several surveys from 1970, 1971, 1984, and 1986, which do not show any road on the south part of her property. She testified that she had never seen any vehicle on this road and that, with the exception of Mr. Weiss, who walked on it with her permission, she never saw any individuals use it. Additionally, there is no dispute that, when this issue arose, the road was in very bad shape, being overgrown with vegetation and trees with softball-sized circumferences. In fact, Ms. Powell testified that she had to prune the overgrowth in order to use the road as a walking path. The witnesses were also in agreement that the culvert over the ravine had been washed out in the mid-1980s, rendering it impassable since that time.

Giving the jury's view of the evidence the proper deference, there was more than substantial evidence to support its verdict for Ms. Powell. We therefore reverse the judgment notwithstanding the verdict regarding the prescriptive easement.

Affirmed on direct appeal; reversed on cross-appeal.

STROUD, C.J., agrees.

BIRD, J., concurs.

SAM BIRD, Judge, concurring. I agree that this case should be affirmed on direct appeal for the reasons set forth in the majority opinion. I also agree that the case should be reversed on cross-appeal, but I disagree that such reversal should be based, as the

majority opinion holds, on the failure of the cross-appellee (King) to move for a directed verdict at the close of all the evidence on the issue of his entitlement to a prescriptive easement across Powell's land. King, who was the defendant/counter-claimant below, raised the prescriptive-easement issue in a counterclaim against Powell. As the counter-claimant and proponent of the prescriptive-easement theory, King had the burden of proving that he had acquired, by prescription, the right to use what he alleged to be a roadway across Powell's land.

At the trial, King produced evidence in an attempt to persuade the jury that he had acquired such a prescriptive ease-ment, evidence that the jury apparently found unconvincing. After the entry of judgment in accordance with the jury's verdict, the trial court granted King's motion for judgment notwithstanding the verdict (JNOV), finding that "there was no evidence to substantiate the jury's finding" that King had not proved a pre-scriptive easement, and ordering "that the defendant has estab-lished an easement by prescription across Plaintiff's land."

On appeal, Powell argues that King was not entitled to JNOV because he had failed to move for a directed verdict on the prescriptive-easement issue at the close of all the evidence.

Arkansas Rule of Civil Procedure 50(e) (2003) provides, in part:

> (e) *Appellate Review.* When there has been a trial by jury, the failure of a party to move for a directed verdict at the conclusion of all the evidence, because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict.

It is implicit in the rule that a party need only move for a directed verdict when he considers the opponent's evidence to be insufficient.[1] Although Rule 50(e) refers to "a party," it is nonsensical to interpret the rule to mean that a complainant (plaintiff or counter-claimant), who is the proponent of a cause of action and who has the burden of proof on the issue, must make a meaningless motion for directed

---

[1] Ark. R. Civ. P. 50(a) provides that "[a] party may move for a directed verdict at the close of the evidence offered by an opponent . . . ."

verdict, which no court will ever grant[2], to preserve for review the issue of whether his evidence is sufficient. A motion for directed verdict is, by definition, a challenge to the sufficiency of the evidence. *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003); *The Bank of Eureka Springs v. Evans*, 353 Ark. 438, 109 S.W.2d 672 (2003); *Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745 (2001); *Peterson v. State*, 81 Ark. App. 226, 100 S.W.3d 66 (2003).

I can think of no circumstance in which the proponent of a claim would move the court to declare that the proof he has presented in support of his claim was insufficient to prove his cause of action. Nor can I envision a case where a complainant would seek appellate review of a trial court's improbable grant of a motion for directed verdict in his favor and argue to the appellate court that the trial court erred in finding that his evidence was sufficient to prove his claim. The only situation in which a complainant should logically be required to move for a directed verdict to preserve a sufficiency argument for appellate review is where he desires to challenge the sufficiency of the evidence of which his adversary was the proponent and had the burden of proof, such as when a counterclaim or affirmative defense has been asserted by the adversary. Rule 50(e) should be interpreted accordingly.

The conclusion that Rule 50(e) requires that, as a prerequisite to a complainant raising a sufficiency-of-the-evidence argument on appeal, he must move for a directed verdict on his case in chief, stems from *Mikel v. Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994).[3] However, an analysis of *Mikel* and the authorities relied upon in it reveals that *Mikel* contains no such holding. In *Mikel*, Doris Mikel claimed to be the owner of Lot 7 of the City of West Fort Smith on the east side of the Poteau River. In 1981 Lots 10 and 11, being a part of Lot 7, were purchased by Hubbard Marine Service, Inc., who constructed thereon a concrete drive and dock

---

[2] While conceding that "such a motion will rarely succeed," the majority cites no case in which a complainant's or counter-claimant's motion for directed verdict has ever been granted.

[3] Also, in *Southwestern Bell Tel. Co. v. Garner*, 83 Ark. App. 226, 125 S.W.3d 844 (2003), the court of appeals cited *Mikel* and interpreted it to mean that Rule 50(e) required that the plaintiff, Southwestern Bell, move for a directed verdict on its claim of negligence against defendant, Garner, in order to preserve an argument on appeal that its evidence of Garner's negligence was sufficient to warrant a jury verdict in its favor. The *Garner* court did not mention that in *Mikel*, Hubbard had asserted an affirmative defense.

that extended into the river. Mikel, contending that the concrete drive and dock were on her land, filed suit in ejectment, thus having the burden to prove title to the land on the strength of her title and not upon the weakness of Hubbard's claim. As an affirmative defense, Hubbard pleaded that it had acquired title to the land on which the concrete drive and dock were constructed through accretion to Lots 10 and 11. The jury returned a verdict in Hubbard's favor and Mikel appealed, asserting six points for reversal, including an argument that the jury's verdict was "not supported by a preponderance of the evidence."

Although the supreme court disposed of the appeal by affirming on one of six points, the court saw fit to "briefly" discuss Mikel's other five points. As for her preponderance-of-the-evidence argument, the court declined to consider it because

> plaintiff did not move for a directed verdict on her case in chief, nor did she move for a directed verdict on Hubbard Marine's affirmative defense. The sufficiency of the evidence was never raised in the trial court by plaintiff, and she cannot raise it for the first time on appeal.

317 Ark. at 129, 876 S.W. 2d at 560 (citing Ark. R. Civ. P. 50(e) and *Willson Safety Prods. v. Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990)).

It should first be noted that in *Mikel*, Hubbard Marine had pleaded the affirmative defense of accretion, and that, to challenge the sufficiency of Hubbard's evidence as to its affirmative defense, Mikel was required under Rule 50(e) to move for a directed verdict at the close of Hubbard's case. Secondly, *Willson Safety Prods. v. Eschenbrenner* was a products liability case in which Willson, the appellant and defendant below, had moved for a directed verdict at the close of plaintiff's case but had failed to renew its motion at the close of all the evidence. Willson made no further challenge to the sufficiency of Eschenbrenner's evidence until it moved for JNOV after the jury returned its verdict. On appeal, Willson, asserted four points for reversal, three of which were challenges to the sufficiency of the evidence. In declining to consider those three points, the court said:

> We believe that the intent of the rule is to require *a party testing the sufficiency of the evidence* to first submit the question to the trial court, thereby permitting the court to make a ruling at the conclusion of *all* the evidence but prior to verdict, thus preserving the specific question for appeal.

302 Ark. at 232, 788 S.W.2d at 733 (emphasis added in first italicized phrase; emphasis in original "*all* ").

I cannot read *Eschenbrenner* as requiring a complainant, who is without any logical reason to test the sufficiency of his own evidence, to move for a directed verdict as a prerequisite to arguing on appeal that his evidence was sufficient to sustain a jury's verdict or to move for JNOV. Likewise, I cannot believe that the loosely-worded dicta in *Mikel* is a declaration by our supreme court that Rule 50(e) requires the party who has the burden of producing the evidence to challenge its sufficiency as a prerequisite to arguing on appeal that his evidence was or was not sufficient to support or set aside a jury's verdict.

For the foregoing reasons, I do not believe that King should be barred from arguing on appeal that the evidence that he presented in support of his claim to a prescriptive easement was sufficient to support JNOV in his favor, and I would reach the merits on the issue. However, on the merits, I agree that the trial court erred in granting JNOV in favor of King on the jury's verdict that he failed to prove the existence of an easement by prescription.