McCOURT MANUFACTURING CORPORATION *v.*
Dave RYCROFT

CA 07-1182 284 S.W.3d 84

Court of Appeals of Arkansas
Opinion delivered May 14, 2008

[Rehearing denied June 25, 2008.]

*Thompson and Llewellyn, P.A.*, by: *James M. Llewellyn, Jr.*, and *William P. Thompson*, for appellant.

*Pryor, Robertson, Beasley, Smith & Karber PLLC*, by: *C. Brian Meadors* and *Rebekah J. Kennedy*, for appellee.

SAM BIRD, Judge. McCourt Manufacturing Corporation (hereinafter the Corporation) brings this appeal from a judgment in favor of its former employee, appellee Dave Rycroft. The judgment awarded Rycroft $12,498.15 in unpaid commissions and a statutory penalty of $164.38 per day from the date of his termination until payment of the $12,498.15 to him. The Corporation raises two points pertaining to the imposition of the penalty under Ark. Code Ann. § 11-4-405 and a third point regarding the court's refusal to give jury instructions on its affirmative defenses. The Corporation contends that the trial court erred (1) in submitting to the jury the issue of the application of penalty provisions; (2) in extending the accrual of the penalty beyond sixty days; and (3) in refusing to submit instructions to the jury on the issues of waiver and estoppel. We reverse on the first point and hold that the trial court erred in refusing to grant the Corporation's motion for directed verdict on the issue relating to the penalty provision of Ark. Code Ann. § 11-4-405. Our reversal on the first point renders the second point moot. We affirm on the third point and hold that the trial court did not err in refusing to submit instructions to the jury on the Corporation's affirmative defenses of estoppel and waiver.

Rycroft began working for the Corporation as supervisor of sales on March 21, 2005, for a salary of $60,000 annually. According to Rycroft, the Corporation's president, Charles McCourt (hereinafter referred to as McCourt), agreed to also pay him a commission of 0.5% of all gross sales, payable quarterly. When, at the end of June 2005, Rycroft received no commission, he asked McCourt about it, and McCourt denied having agreed to pay him any commission. Rycroft continued working for the Corporation for the annual salary until he was fired on January 16, 2006.

On January 23, 2006, Rycroft's attorney sent a letter addressed to Charles McCourt at McCourt Manufacturing Corporation. The letter stated, "Please send Mr. Rycroft's unpaid wages to him c/o C. Brian Meadors, 315 N. 7th, Fort Smith, AR, 72901. Mr. Rycroft's unpaid wages include the commissions, i.e., 0.5% of gross sales of McCourt Manufacturing during Mr. Rycroft's employment there." The letter was hand-delivered by a "runner" from the attorney's office to the offices of the Corporation, where the runner placed it in the hands of an unknown man. The Corporation did not respond to the letter and did not pay Rycroft any of the requested commission.

Rycroft sued the Corporation for a 0.5% commission on the company's gross sales from March 21, 2005, through January 16, 2006, plus a penalty for nonpayment of wages as provided in Ark. Code Ann. § 11-4-405. Paragraph 8 of Rycroft's complaint included the following: "On January 23, 2006, a written demand for unpaid wages was hand delivered to the Defendant [the Corporation]. A copy of that letter is attached as Exhibit A. There has been no response from the Defendant." In its initial and first amended answer, the Corporation admitted the allegations of paragraph 8; in a second amended answer, it denied the allegations of paragraph 8.

The case was tried to a jury. Yolanda Bell, who worked for Rycroft's attorney's law firm, testified that she was the "runner" who took a letter to the Corporation's office on Monday morning, either the 23rd or the 24th of January 2006, and she delivered it to "a guy" she did not know, who came out into the hallway from one of the offices. She said that the person to whom she delivered the letter was neither McCourt nor Mark Price and that she did not know whether the man was an employee of the Corporation.

Charles McCourt testified that the Corporation admitted the allegation of paragraph 8 in its initial response to the complaint and in its first amended answer, and a year later the Corporation

denied receiving the letter on January 23. He agreed that the Corporation had received the letter but said, "[W]e don't know who received it or the time. It is possible it could have been received by someone at McCourt Manufacturing on January the twenty-third." The Corporation's initial response and first amended answer were introduced into evidence through McCourt's testimony.

Rycroft testified that, before he accepted employment with the Corporation, McCourt agreed to pay him a commission of 0.5% of gross sales. He said that, at first, McCourt was his supervisor but, at some point, McCourt gave Mark Price more authority and Price became his supervisor. Rycroft stated that, at the end of the second quarter of 2005, he was disturbed when he did not receive a commission check and that he sought out Price, who told him that he needed to see McCourt about the problem. Rycroft stated that, when he asked McCourt about his commission check, McCourt denied having agreed to pay him a commission. Rycroft stated that, although he was unhappy about McCourt's failure to do what he had agreed to do, he (Rycroft) did not leave the job at that time; he did, however, decide to start looking for other employment.

Judy Joyce, who was responsible for the Corporation's payroll, testified that she heard Rycroft "constantly" complain about not being paid what he thought he should receive. Another employee, Tammy Helliker, testified that Rycroft also told her that he was entitled to a commission.

Mark Price testified that he did not receive the January 23 letter, which was delivered when McCourt was in Florida. Price said he was charged with receiving important correspondence, "such as lawyer letterhead documents," and took all of the Corporation's important legal correspondence to McCourt when he was away. Price testified that he or Joyce opened the mail when it came in, he looked at what he took to McCourt, and the January 23 letter was not included. He stated that McCourt returned during the third or fourth week of February and showed him the letter during the last week of February, which was the first time he saw it. He said that he saw the letter a week-and-a-half to a month before the lawsuit was served "[i]f service of the lawsuit was in April," and he acknowledged his deposition statement that he saw the complaint within a day or two of McCourt being served.

Finally, Price testified that he thought the lawsuit was served in April, and he denied being aware that the date of service was February 25, 2006.

The Corporation moved for a directed verdict on Rycroft's claim for the imposition of a penalty under Ark. Code Ann. § 11-4-405, arguing that there was no evidence that the request for payment was delivered to either Rycroft's foreman or the keeper of his time. The court denied the motion. The Corporation requested an instruction to the jury on its waiver and estoppel defenses, which the court refused. The jury returned a verdict for Rycroft on his breach-of-contract action[1] and for his claim for the statutory penalty. The trial court entered a final judgment on the verdict, making the following findings and conclusions:

> The parties had previously stipulated that if liability were found on Special Interrogatory No. 1, then the damages would be set at $12,498.15.

> Under Ark. Code Ann. § 11-4-405, the statutory penalty accrues at the same rate as the discharged employee's wages. This penalty accrues until the unpaid wages (*i.e.*, the $12,498.15) are paid to the employee. *See* Ark. Code Ann. § 11-4-405(a)(2). It is uncontroverted that Plaintiff Rycroft was discharged on January 16, 2006, and that at the time of his discharge his wages were $60,000 per year. Therefore, the penalty accrues at a rate of $60,000 divided by 365 days, or $164.38 per day, with the first such day being January 17, 2006, and continuing until the $12,498.15 is paid. Because Plaintiff Rycroft commenced this action within 60 days of his discharge, the penalty continues beyond the initial 60 days. *See* Ark. Code Ann. § 11-4-405(a)(2) (last sentence).

> . . . .

> It is further ordered that, under Ark. Code Ann. § 11-4-405, Plaintiff Dave Rycroft is awarded a judgment against the Defendant in the amount of $164.38 per day, with the first such day being

---

[1] Prior to trial, Rycroft stipulated that, under *City of Huntington v. Mickles*, 96 Ark. App. 213, 240 S.W.3d 138 (2006), his breach-of-contract damages were limited to the amount of commission that he earned before the end of the second quarter of 2005, and the parties stipulated that, if the jury determined that Rycroft was entitled to the commission, the amount of Rycroft's recovery for his commission would be $12,498.15.

January 17, 2006, and continuing until the $12,498.15 is paid. Once the $12,498.15 has been paid by the Defendant to Mr. Rycroft, the $164.98 per day penalty shall no longer accrue and only past amounts will be due.

The court added that the penalty would no longer accrue if the Corporation should pay Rycroft the $12,498.15 prior to the filing of the notice of appeal. The Corporation then pursued this appeal.

*Demand for Wages under Ark. Code Ann. § 11-4-405*

Arkansas Code Annotated section 11-4-405 (Repl. 2002) provides:

(a)(1) Whenever any railroad company or corporation or any receiver operating any railroad engaged in the business of operating or constructing any railroad or railroad bridge shall discharge, with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of the servant or employee then earned at the contract rate, without abatement or deduction, They shall be and become due and payable on the day of the discharge or refusal to longer employ.

(2) Any servant or employee may request of his foreman or the keeper of his or her time to have the money due him or her, or a valid check therefor, sent to any station where a regular agent is kept. If the money or a valid check therefor does not reach the station within seven (7) days from the date it is so requested, then, as a penalty for the nonpayment, the wages of the servant or employee shall continue from the date of the discharge or refusal to further employ at the same rate until paid. However, the wages shall not continue more than sixty (60) days unless an action therefor shall be commenced within that time.

(b) This section shall apply to all companies and corporations doing business in this state and to all servants and employees thereof. Any servants or employees who shall hereafter be discharged or refused further employment may request or demand the payment of any wages due and, if not paid within seven (7) days from discharge or refusal to longer employ, then the penalties provided in subdivision (a)(2) of this section for railway employees shall attach.

As its first point on appeal, the Corporation contends that Rycroft did not strictly comply with the statute because he neither demanded his unpaid wages at the time of discharge nor made

demand upon his foreman, whether Mark Price or Charles Mc-Court, or upon the keeper of his time, Judy Joyce. The Corporation presented the following argument in its motion for a directed verdict on the statutory provision for penalty:

> [T]hat provision is strictly interpreted by our Courts, all the decisions show it is strictly interpreted. Irrespective of the timing issue that is in great dispute before the Court, the statute does require that the notice be delivered to the timekeeper or the foreman. The foreman in this case would have been Mr. Price or Mr. McCourt. Ms. Bell testified she didn't hand it to either of these two people as she looked at their photographs. The other possibility was to the timekeeper. Ms. Joyce was payroll clerk. She was here, she definitely was not the man Ms. Bell said she delivered it to. Furthermore, she said she never received the letter. Therefore, the Plaintiff has not complied with the strict interpretation of the statute and we ask for a directed verdict.[2]

The question before us is whether substantial evidence supports the jury's award of a statutory penalty. Rycroft asserts that he was required only to show that the letter was addressed to the foreman and was delivered to the Corporation's offices. He points to evidence supporting these facts and to the Corporation's judicial admissions, made in its initial response and first amended answer, that it received the letter on January 23.

Rycroft also asserts that the evidence supports a finding that the letter was personally delivered to the foreman or timekeeper. Regarding delivery to the foreman (Price or McCourt), Rycroft notes the following evidence: McCourt testified that someone at the Corporation could have received the letter on January 23; Price testified that he received and gathered incoming legal letters during the time at issue; the Corporation judicially admitted, twice, that the letter was hand-delivered to the Corporation on January 23; and Price admitted receiving the letter when McCourt showed it to him a week-and-a-half to a month before service of the complaint on February 25. As proof that the timekeeper

---

[2] Rycroft argues that the Corporation failed to preserve this argument because the motion was made at the conclusion of all the evidence rather than at the close of Rycroft's case in chief. However, to preserve the sufficiency issue, an appellant is required to move for a directed verdict only at the close of all the evidence. *See* David Newbern & John J. Watkins, *Arkansas Civil Practice and Procedure* § 28:14, at 540 (4th ed. 2006).

(Joyce) personally received the letter, Rycroft notes Price's testimony that he or Joyce received the mail, the Corporation judicially admitted receiving the letter on January 23, and Joyce neither denied nor admitted receiving the letter.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *King v. Powell*, 85 Ark. App. 212, 148 S.W.3d 792 (2004). When reviewing the denial of a motion for a directed verdict, we determine whether the jury's verdict is supported by substantial evidence. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without having to resort to speculation or conjecture. *Id.* When determining the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* It is not our province to try issues of fact; we simply examine the record to determine if there is substantial evidence to support the jury verdict. *Id.*

The statute for payment of wages to discharged employees is penal in nature, and the penalty will be imposed only in favor of one who comes strictly within its language. *Howard v. Glenn Bros. Trucking, Inc.*, 271 Ark. 566, 609 S.W.2d 897 (1981). Our supreme court has long held, under previous versions of this statute, that recovery cannot be had unless the discharged employee shows that he has made a distinct demand in accordance with the statute's terms. *Bush v. Coleman*, 131 Ark. 379, 199 S.W. 87 (1917); *Hall v. Chicago, Rock Island & Pac. Ry. Co.*, 96 Ark. 634, 132 S.W. 911 (1910); *Ry. Co. v. McClerkin*, 88 Ark. 277, 114 S.W. 240 (1908); *St. Louis, Iron Mountain & S. Ry. Co. v. Bailey*, 87 Ark. 132, 112 S.W. 180 (1908). In *McClerkin, supra*, our supreme court clearly stated, "Nothing can be taken by intendment to show compliance with statutes of this kind." *McClerkin*, 88 Ark. at 281, 114 S.W. at 242 (1908); *see also Lusk v. Jones*, 128 Ark. 312, 194 S.W. 250 (1917) (adhering to the court's former construction that, in order for a railroad employee to avail himself of the penalty, he must comply strictly with the statute). In *Bush v. Coleman*, 131 Ark. 379, 199 S.W. 87 (1917), the statutory words "foreman or keeper of . . . time" were interpreted to mean the discharged employee's immediate foreman or timekeeper, not merely any superior in the same department. The supreme court explained:

The purpose of the statute is that the demand shall be made either to the superior who has immediate supervision over the discharged employee, or the one who keeps his time. The master mechanic at Van Buren had general supervision over the employees in that department, but he was not the foreman or timekeeper within the meaning of the statute, and the demand on him for payment of the wages was not sufficient compliance with the terms of the statute to justify the imposition of the penalty . . . .

131 Ark. at 381, 199 S.W. at 88.

Viewing the evidence and all reasonable inferences arising therefrom in the light most favorable to Rycroft, we examine the evidence that supports the jury's award of this statutory penalty. Charles McCourt testified that the Corporation admitted the allegation of paragraph 8 in its initial response to the complaint and in its first amended answer, and these two pleadings were admitted into evidence through his testimony. Yolanda Bell, the runner for Rycroft's attorney, testified that she delivered the January 23, 2006 demand letter to an unidentified man at the Corporation's business and explained to him who she was and who she was with. She testified that the man to whom she delivered the letter was neither Price nor McCourt. Judy Joyce testified that she was the keeper of the Corporation's payroll.

In our view, this evidence falls far short of satisfying the statute's requirement that the demand be made upon the claimant's foreman or the keeper of his time. Our supreme court clearly stated in *Bush* that "demand shall be made either to the superior who has immediate supervision over the discharged employee, or the one who keeps his time." 131 Ark. at 381, 199 S.W. at 88. The witnesses' testimony in the present case and the Corporation's judicial admissions, revealed in its initial answer and first amended answer, support only a finding that written demand for unpaid wages was hand delivered to an unidentified man at the defendant Corporation who was neither McCourt nor Price. Given the penal nature of this statute, we must adhere to its strict construction and cannot rely on inferences about how or when the letter ultimately reached McCourt, Price, or Joyce. We hold, therefore, that the trial court erred in submitting this issue to the jury because there was no evidence from which the jury could find that Rycroft had strictly complied with the provisions of the statute. Thus, we reverse the imposition of the statutory penalty.

### Waiver and Estoppel Instructions

■ However, we do not agree with the Corporation that the court erred in refusing to instruct the jury on its affirmative defenses of waiver and estoppel. Before the case was submitted to the jury, Rycroft had agreed that, under *City of Huntington v. Mickles*, 96 Ark. App. 213, 240 S.W.3d 138 (2006), he was limited in his recovery of commissions to those accrued prior to the end of the second quarter of 2005. Under *Mickles*, Rycroft could not assert a valid claim for any commissions accruing after June 30, 2005, when he was informed by McCourt that there had been no agreement to pay him a commission. But *Mickles* does not preclude Rycroft from asserting a claim to commissions to which he claimed to have become entitled before McCourt disavowed the existence of an agreement for commissions. Rycroft's continuing to work after June 30 could not have constituted a waiver by Rycroft of any commissions that he had already earned, and Rycroft could not be estopped to make claim for those commissions. Therefore, the court properly denied the Corporation's request for a jury instruction on those affirmative defenses.

We affirm the award of $12,498.15 for commissions due Rycroft. However, we reverse the judgment as to the penalties awarded under Ark. Code Ann. § 11-4-405.

Affirmed in part; reversed in part.

GLOVER and HEFFLEY, JJ., agree.