SEBASTIAN LAKE DEVELOPMENT, INC. *v.* UNITED TEL. CO.

5-3719 · 398 S. W. 2d 208

Opinion delivered January 24, 1966

*Garner & Garner,* for appellant.

*Dale L. Bumpers,* for appellee.

CARLETON HARRIS, Chief Justice. The principal question on this appeal is whether a public service corporation can acquire an easement by prescription. Sebastian Lake Developments, Inc., appellant herein, is the owner of certain real estate lying in the Greenwood district of Sebastian County. United Telephone Company, appellee herein, which serves the communities of Bonanza and Hackett, Arkansas, instituted suit against appellant company, asserting that it (appellee), in furnishing service to the aforementioned communities, "has owned, operated and maintained a telephone line across the aforesaid lands for a period of over twenty years last past, and had maintained the said line for approximately twenty years before the acquisition of the aforesaid lands by the defendant.

## VI

"That prior to the purchase of the said property aforesaid by the defendant, numerous surveys, studies and observations were made by the officers of the defendant corporation, its agents and employees, and the said defendant, by its officers, was fully aware of the existence of the aforesaid telephone lines belonging to the plaintiff and had due notice of their said existence prior to the acquisition of the said lands.

## VII

"That the defendant, subsequent to its acquisition of the lands aforesaid, immediately commenced construction of a dam on a portion of the above described lands and that the said dam is presently under construction by the defendant.

## VIII

"That the effect of the completion of the said dam will be to flood the lands described hereinabove, and specifically the poles and lines operated, owned and maintained by the plaintiff."

Appellee claimed an easement by prescription, and asked that the Sebastian Lake Company be enjoined from flooding the property where appellee had acquired the easement. Appellant answered, asserting that it had no notice of the existence of poles and lines prior to acquiring the lands, and denying that the telephone company had acquired any easement by prescription. The answer prayed that appellee be ordered and directed to remove the lines and poles from the lands belonging to appellant. The case proceeded to trial, and, after hearing evidence, the court entered its decree, finding that the telephone company had owned, operated, and maintained telephone lines and poles across the lands involved for a period of more than twenty years; that the lines and poles are clearly visible from State Highway No. 45, and that the officers, agents, and employees of appellant company knew, or should have known, of the existence of the lines and poles prior to its purchase of the lands; that appellee had acquired an easement across these lands by

prescription. The court further found that appellant company should be enjoined from interfering with appellee's operation and maintenance of the lines and poles, and also found that appellant company had built a dam and "admittedly may flood the poles belonging to the aforesaid plaintiff." As to the flooding of the premises by appellant, the court required that Sebastian Lake Developments, Inc., should post a bond in the sum of $2,000.00 to compensate appellee if the flooding should interfere with or impair United Telephone Company's right to use of the lines and poles.[1] From the decree so entered, appellant brings this appeal. Appellant confines its arguments, first, to the question of whether a public service corporation can legally acquire an easement by prescription, and second, whether the proof in this case supports the finding by the Chancellor.

Ark. Stat. Ann. § 73-1801 through § 73-1805 (Repl. 1957) deal with the right of certain utility companies (telephone and telegraph companies) to condemn rights of way and construction of lines. Appellant points out that although Section 73-1804 gives these companies the right to peacefully enter upon lands for the purpose of surveying, locating and laying out their lines, the companies are (quoting statute) "liable, however, for any damage that may result by reason of such acts." Appellant also directs our attention to Ark. Stat. Ann. § 35-201 (Repl. 1962), which provides:

---

[1]"It is therefore by this court ordered, adjudged and decreed that plaintiff has a valid easement across the lands of the defendant, and the defendant, its agents, servants and employees should be, and they are hereby, enjoined from interfering with the plaintiff's use, occupancy and maintenance of its poles, lines and easement across the said lands.

"It is further ordered, adjudged and decreed that the defendant post a bond in the penal sum of $2,000.00 within ten days from and after the entry of this decree, to protect the plaintiff against any and all damages plaintiff may sustain from the flooding of its poles or lines, or both, or such other damages which plaintiff may sustain by the interruption of plaintiff's usage, occupancy or maintenance of the plaintiff's lines and poles caused by the defendant, its agents, servants or employees."

"Any railroad, telegraph or telephone company, organized under the laws of this State, after having surveyed and located its lines of railroad, telegraph or telephone, shall in *all*[2] cases where such companies fail to obtain by agreement with the owner of the property through which said lines of railroad, telegraph, or telephone may be located, the right of way over the same, apply to the Circuit Court of the county in which said property is situated, by petition, to have the damages for such right of way assessed, * * * ."

Likewise, appellant contends that a prescriptive right by a corporation is violative of Article 12, Section 9, of the Arkansas Constitution. We disagree with appellant's argument, holding that these provisions relate to peaceable entry and proceedings thereunder.[3] Ark. Stat. Ann. § 35-101 (Repl. 1962), which is the first section under the title, "Eminent Domain," provides:

"Whenever any corporation authorized by law to appropriate private property for its use shall have entered upon and appropriated any property, real or personal, the owner of such property shall have the right to bring an action against such corporation in the circuit court of the county in which said property is situated for damages for such appropriation at *any time before an action at law or in equity for the recovery of the property so taken, or compensation therefor, would be barred by the statute of limitations*[4] and the measure of recovery in such action shall be the same as that governing proceedings by corporations for the condemnation of property. * * * *"

This section negates appellant's contention that a public service corporation cannot acquire an easement by prescription. Certainly, the section includes a telephone

---

[2]Emphasis supplied.

[3]For instance, Section 73-1804 relates only to damages that occur in laying out lines on the right of way after acquiring same, *i.e.,* damage to the land *beyond* the right acquired by the company.

[4]Emphasis supplied.

company, for a telephone company holds the power of eminent domain, and furthermore, the language definitely includes *any* corporation possessing the authority to appropriate private property for its use. It will be noted that the section specifically sets out that the owner of property, whose land has been appropriated by a corporation for its use, shall bring his claim against the corporation at any time *before such claim would be barred by the statute of limitations.* This last provision would be useless and superfluous if appellant's contention is correct.

In *Mo. & No. Ark. Railroad Co. v. Chapman,* 150 Ark. 334, 234 S. W. 171, a situation with some similarity was presented. Appellees instituted suit against the appellant railroad for compensation allegedly due because the railroad had appropriated one hundred feet of land for a right of way. The company constructed its railroad across this strip of land in 1908, and had operated across this strip from that time until 1919, when appellees filed their suit for compensation. The statute of limitations was pleaded by the company. This defense was not allowed by the trial court, and appellees recovered a judgment. On appeal, this court reversed the trial court, stating:

"Sec. 3930[5] of Crawford & Moses' Digest provides that whenever any corporation, authorized by law to appropriate private property for its use, shall have entered upon and appropriated any property, the owner of the property shall have the right to bring an action against such corporation for damages for such appropriation at any time before an action at law or in equity for the recovery of the property so taken, or compensation therefor, would be barred by the statute of limitations.

"In construing this statute, the court has held that it

---

[5]This section is identical to our present Section 35-101, except that the latter adds the phrase, "and the measure of recovery in such action shall be the same as that governing proceedings by corporations for the condemnation of property."

supersedes the commonlaw remedies afforded the owner, and that the statutory remedy for damages is exclusive. *McKennon* v. *St. L. I. M. & So. Ry. Co.,* 69 Ark. 104. The statute fixes the time for bringing the action at any time before the action at law or in equity for recovery of the property so taken, or compensation therefor, would be barred by the statute of limitations.

"At common law the owner would have had the right to have brought his suit at any time before the company had acquired the right to the property taken by adverse possession for the statutory period of seven years. *Organ* v. *Memphis & Little Rock Rd. Co.,* 51 Ark. 235. Thus it will be seen that under the statute the owners of the land had a right to bring suit for compensation for the land taken by the railroad company for its right-of-way at any time within the period of seven years after the land was taken.

\* \* \*

"It follows that the court erred in holding that Charles and William Chapman were not barred of recovery under the seven-year statute of limitations, and for that error the judgment in their favor will be reversed; and, inasmuch as the testimony with regard to the statute of limitations running against them is undisputed, their cause of action will be dismissed."

We think it apparent that appellant's argument is erroneous.

For its second contention, appellant asserts that the proof is not sufficient to support the Chancellor's finding that appellee had acquired an easement by prescription. Appellant argues that the land is wild and unimproved, and that appellee has not met the burden of showing that its use was adverse. The record reflects that the land is partly fenced, and has been used for many years for the grazing of cattle. The president of United Telephone Company testified that, of his personal knowledge, the lines had been up since 1950. His testimony reflected that these lines had been serviced, and

he stated that the land had been mainly used (by a previous owner, Mrs. Chambliss) as pasture; that he had observed cattle grazing on it from time to time. Paul McCulloch testified that he had worked on the lines, off and on, since 1948, and that no one had ever questioned his right to go on the land or to service the poles. He likewise stated that he had been across the lands approximately four or five times a year since 1948; had frequently observed cattle grazing, and that the biggest portion of the land was under fence. For that matter, Douglas Parker, Secretary-Treasurer of Sebastian Lake Developments, Inc., testified that he had been familiar with the land for thirteen years, and was aware of the fact that the telephone lines ran across this land prior to the time it was purchased by appellant. He likewise stated that he had observed the cattle at various times, and that part of the land was fenced.

Appellant takes the view that appellee's use of the land was permissive, arguing that this court has held that mere use does not ripen into a prescriptive right unless the circumstances are such as to put the owner of the property on notice that the right of way is being used adversely under a claim of right. We agree with this statement of the law, but we think the record supports the Chancellor's finding that appellee had met the burden of showing that the land was being used adversely under a claim of right. The lines and poles were visible; the company's employees entered when necessary to repair and service the poles. Appellee's acts, over a long period of years, were entirely consistent with the acts of one who claims an easement—and these acts had been observed by company representatives, and certainly could have been seen by prior owners of the property. In *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S. W. 2d 281, this court said:

"A consideration of the many opinions of this court regarding the acquisition of a right-of-way over lands makes it clear, in our opinion, that no real conflict exists. All our opinions are in harmony on one

point, *viz.*: Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right.

"In our opinion, in the case under consideration, the weight of the testimony supports the finding of the chancellor that appellee and her predecessors in title used road 'B' for more than seven years after appellants and their predecessors in title knew or should have known that the road was being used adversely. * * *

"* * * Thus the weight of the testimony supports the chancellor's finding that the road has been used by appellee and the public openly and adversely for more than 7 years and that the constant usage of said road for some 40 years under the circumstances of this case overcomes the presumption that said usage was permissive."

In the case before us, the evidence does not reflect a use by the telephone company for as much as forty years, but certainly there was a constant use for between thirteen and fifteen years. Here, there is no evidence that any owner gave permission to appellee to put up its poles, though the record reflects that appellee's use of the strip of land was exercised during periods in which a Mrs. Chambliss, and subsequently, Jim Burgess and H. B. Dubois, Jr.,⁰ owned the land. According to the transcript, Mrs. Chambliss is still alive, and living in the county, but she was not called upon to testify. The record reveals that the telephone company simply went on to the premises, laid its lines, and continued to service same as needed over a long period of years.

---

⁰Sebastian Lake Developments, Inc., purchased the property from Burgess and Dubois.

From what has been said, it is apparent that we do not agree with appellant's contentions, and we hold that United Telephone Company acquired an easement by prescription over the strip of land (where the poles and lines were situated) owned by Sebastian Lake Developments, Inc. It might be added that this is the only question presented to us on this appeal, and the only question that we pass upon. We render no holdings or findings with regard to correlative rights of the parties as dominant and servient owners of the right of way.

Affirmed.

Cobb, J., not participating.