Harlan FLEECE and Nancy Fleece *v.*
Bill KANKEY and Charlotte Kankey

CA 01-1020                                                72 S.W.3d 879

Court of Appeals of Arkansas
Division III
Opinion delivered April 3, 2002

*Osman & Ethredge, P.A.*, by: *David Ethredge* and *Kincade Law Firm*, by: *Kerry D. Chism*, for appellant.

*Larry Dean Kissee*, for appellee.

OLLY NEAL, Judge. The parties are adjoining landowners. They agreed that an old fence was the boundary line between them, and agreed to share in the cost of replacing the fence. The appellees bulldozed the old fence that separated the properties. They also bulldozed all the trees alongside the fence. Appellants accused appellees of erecting the new fence in the wrong location and of removing their trees without permission.

The trial court found that, with the exception of two posts that needed to be moved south two feet, the new fence was located in the same position as the old fence. The court also found that appellants suffered no loss with regard to the removed trees because the trees had no market value.

On appeal, appellants argue that the trial court committed error by ruling that they could not be awarded damages for the replacement value of the trees removed because they had no market value and because the removal of the trees and installation of the new fence actually improved the area. We reverse and remand.

■ ■ Although chancery cases are reviewed *de novo* on the record, the appellate court does not reverse unless it determines that the chancery court's findings of fact were clearly erroneous. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite conviction that a mistake was committed. *Hedger Bros. Cement & Material v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000). In reviewing a chancery court's findings of fact, the appellate court gives due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Jennings v. Burford, supra.*

■ ■ Arkansas Code Annotated section 18-60-102(a) (1987) provides, in part, that "if any person shall cut down, injure, destroy, or carry away any tree placed or growing for use or shade . . . on the land of another person, . . . the person so trespassing shall pay the party injured treble the value of the thing so damaged, broken, destroyed, or carried away, with costs." The treble-damages remedy under this code section requires a showing of intentional wrongdoing, even though the intent may be inferred

from the carelessness, recklessness, or negligence of the offending party. *Hackleton v. Larkan*, 326 Ark. 649, 933 S.W.2d 380 (1996). Less than intentional conduct may support double damages under Ark. Code Ann. § 20-22-304, which concerns causing fire and damage to another's property. *Id.* This double–damages remedy, however, must be pleaded in order to give a defendant adequate notice of the remedy he would be confronting. *Id.*

Appellants argue that there is no requirement in section 5-60-102 section that a tree must have a market value in order for a landowner to be entitled to replacement value damages. Larry Morris, a registered forester, gave expert testimony as to the value of the trees. Morris estimated that thirty–five trees had been bull-dozed on the east/west side and twenty–five trees on the north/south side, and testified that the trees removed from the fence row included Post Oak, Black Oak, and Black Jack Oak. He calcu-lated that the replacement value of the trees was $17,531 and opined that the Black Jack Oak had no merchantable value and was worth nothing, except for firewood.

The trial court, in its judgment and decree, found that Mor-ris's testimony was not helpful because all of his testimony con-cerned replacement value and he stated that he was unable to give an opinion concerning market value. The court stated that, "in view of the rural nature of this area, and the location of the lane over which the [appellants] travel, it seems absurd to award dam-ages on a replacement estimate, because the removal of the old fence and the installation of the new fence has actually improved the area." The ruling was clearly erroneous and suggests that the court failed to consider evidence as to the number of trees cut down and their replacement value.

■ We have adopted the rule that when ornamental or shade trees are injured, the use made of the land should be consid-ered, and the owner compensated by the damages representing the cost of replacement of the trees. *Revels v. Knighton*, 305 Ark. 109, 805 S.W.2d 649 (1991). Damages awarded for loss of a shade tree cannot include both replacement costs and consequential damages. *Id.*

■ Because the trial court appears to have relied entirely on the question of market value, we are unable to determine whether the court considered other factors besides the market value in assessing appellants' damages, including replacement value and the number of trees lost. Therefore, we reverse and remand.

■ We note that it appears uncontroverted that many of the trees were located in the boundary line. Other jurisdictions have held that owners of boundary line trees are considered tenants in common, and neither tenant possesses the right to destroy the commonly held property without consent of the other. *Holmberg v. Bergin*, 172 N.W.2d 739 (Minn. 1969); *see e.g.*, *Ridge v. Blaha*, 166 Ill. App.3d 662, 520 N.E.2d 980 (1988).

Reversed and remanded.

PITTMAN and CRABTREE, JJ., agree.