Ronald SCHRADER *v.* Bruce SCHRADER, *et al.*

CA 02-677                                              101 S.W.3d 873

Court of Appeals of Arkansas
Division I
Opinion delivered April 2, 2003

*Gibson & Gibson, P.A.,* by: *Sam Gibson,* for appellant.

*Rebecca Brown, P.A.,* for appellees.

TERRY CRABTREE, Judge. This is a real-property case involving a dispute between two brothers. The Saline County Chancery Court found that the appellees, Bruce and Mary Schrader, had adversely possessed the disputed land, awarded them treble damages for destruction caused to their property by the appellant, and awarded them attorney's fees. On appeal, appellant claims that the trial court erred (1) in ruling that appellees acquired the land in question via adverse possession, (2) in awarding appellees treble damages, and (3) in awarding appellees attorney's fees. We affirm.

Although chancery cases are reviewed *de novo* on the record, the appellate court does not reverse unless it determines that the chancery court's findings of fact were clearly erroneous. *Fleece v. Kankey,* 77 Ark. App. 88, 72 S.W.3d 879 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite conviction that a mistake was committed. *Hedger Bros. Cement & Material v. Stump,* 69 Ark. App. 219, 10 S.W.3d 926 (2000). In reviewing a chancery court's findings of fact, the appellate court gives due deference to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Jennings v. Burford,* 60 Ark. App. 27, 958 S.W.2d 12 (1997).

On May 29, 1998, the appellant, Ronald Schrader, filed a quiet-title action against property owners on four sides of his eighty-acre tract of land. Appellees own property that adjoins the west side of appellant's land. Ronald Schrader and Bruce Schrader lived on the property, which is now owned by appellees, as children. In 1976, appellees bought the property from Ronald Schrader and Bruce Schrader's grandfather, who had owned it since 1928. In the 1930's their grandfather installed a fence along the east side of his property. Ronald Schrader bought the land that borders the east side of his brother's property in 1993 from a non-relative. After Ronald Schrader filed his quiet-title action, he

presented to the trial court a recent survey to prove that the sixty-year-old fence was not on the actual property line between his property and his brother's property. Appellees counterclaimed that they adversely possessed the property in question. In support of their argument, they pointed to the fence erected over sixty years earlier, their maintenance of the disputed property, and the fact that they planted crops on the land.

On June 29, 2000, the trial court found that appellees had adversely possessed the disputed property and granted appellant an easement by necessity on a lane leading to his property. On August 6, 2001, appellees filed a petition against Ronald Schrader for damages to their fence and property and requested a permanent injunction restricting Ronald Schrader from entering their property. Appellees also complained that Ronald Schrader had violated the court's previous order with regard to the boundary line. Upon motion by appellant, the matter was merged into the quiet-title action as it was not fully adjudicated at that time. On December 3, 2001, the trial court entered an order, which permanently enjoined appellant from entering appellees' property.

On March 5, 2002, the trial court awarded appellees treble damages for appellant's deliberate destruction of their plants, crops, and fence materials. The trial court also awarded appellees attorney's fees and costs due to appellant's disregard of the court's previous determination as to the correct location of the boundary line between the two properties and the violation of the permanent injunction entered by the court on December 3, 2001.

At trial, appellant requested the trial court to state for the record the reason it denied admission of certain exhibits offered by appellant. The court stated:

> At the conclusion of the testimony approximately two years ago, I went out to the property with [the parties' attorneys]. I walked the property. I thought it was very, very clear regardless of where the actual survey lines may be, that where the actual lines, whether you call it title by acquiescence or adverse possession, were, considering the pond, considering how one part of the disputed property was mowed and well-kept and the other was basically undergrowth. There was a ridge around the pond. There was then a creek on the other side, as I remember. And that's why. And it's been two years, and I think it's clear as it can

be where the property line should be, in fact, as opposed to perhaps wherever the survey line is.

After both parties rested, appellant moved for a directed verdict on the issues of adverse possession based on (1) the absence of proof of hostile intention and (2) the requirement of Ark. Code Ann. § 18-11-106 (Supp. 1997) that a party claiming adverse possession must prove payment of taxes on the property in issue or on contiguous property. The trial court took the motion under advisement.

For appellant's first point on appeal, he contends that the trial court erred in finding that appellees adversely possessed the land in dispute because appellees failed to present proof of payment of *ad valorem* taxes on the property. The Arkansas General Assembly amended the statutory requirements for proof of adverse possession in Act 776 of 1995, now codified at Ark. Code Ann. § 18-11-106. In order for a claimant to establish title by actual adverse possession under the new law, the claimant must prove color of title and payment of taxes in addition to all of the elements necessary under existing adverse possession law in the state of Arkansas. *Jones v. Barger*, 67 Ark. App. 337, 1 S.W.3d 31 (1999). Arkansas Code Annotated § 18-11-106 (Supp. 1999) states:

> (a) To establish adverse possession of real property, the person, and those under whom the person claims, must have actual or constructive possession of the property being claimed and have either:
>
> (1)(A) Held color of title to the property for a period of at least seven (7) years, and during that time have paid ad valorem taxes on the property.
>
> (B) For purposes of this subdivision (a)(1), color of title may be established by the person claiming adversely to the true owner by paying the ad valorem taxes for a period of at least seven (7) years for unimproved and unenclosed land or fifteen (15) years for wild and unimproved land, provided the true owner has not also paid the ad valorem taxes or made a bona fide good faith effort to pay the ad valorem taxes which were misapplied by the state and local taxing authority; or
>
> (2) Held color of title to real property contiguous to the property being claimed by adverse possession for a period of at least seven (7) years, and during that time have paid ad valorem taxes on the contiguous property to which the person has color of title.

(b) The requirements of this section are in addition to all other requirements for establishing adverse possession.

(c) This section shall not repeal any requirement under existing case law for establishing adverse possession, but shall be supplemental thereto, and, specifically, this section shall not diminish the presumption of possession of unimproved and unenclosed land created under § 18-11-102 by payment of taxes for seven (7) years under color of title, or the presumption of color of title on wild and unimproved land created under § 18-11-103 by payment of taxes for fifteen (15) consecutive years.

Ark. Code Ann. § 18-11-106 (Supp. 1999).

Appellees sought to establish adverse possession to the land in question when they filed their counterclaim on December 16, 1999. Appellees provided no proof to the trial court of payment of *ad valorem* taxes on the land in dispute or on contiguous land. Appellant advocates that this failure in proof is fatal for appellees as they did not comply with the legislature's supplemental requirements outlined in Ark. Code Ann. § 18-11-106. We, however, do not find appellant's argument persuasive. We hold that the law enacted in 1995 does not apply in this case.

There is no dispute that appellees bought their land in 1976. The testimony presented below established that appellees began adversely possessing the disputed property at that time. On the anniversary of the seventh year, appellees' rights to the property vested. These events occurred many years before the General Assembly contemplated a change in the law regarding adverse possession. As appellees' rights to the disputed property had vested well before 1995, appellee need not comply with the 1995 statutory change. *Cf. Patrick v. McSperitt*, 64 Ark. App. 310, 983 S.W.2d 455 (1998) (appellant did not raise the issue of whether Ark. Code Ann. § 18-11-106 should be given retroactive effect where the adverse possession evolved into ownership before the statute was changed).

For appellant's second point on appeal, he maintains that the trial court erred by awarding appellees treble damages. After appellant initiated his quiet-title action, appellees filed an action in circuit court seeking damages from appellant for trespass and damage to their property. They also sought a permanent injunction forbidding appellant "ever to have access to their property." By order entered December 3, 2001, that case was transferred to the

same division of circuit court in which the boundary-line case between the parties was pending. The order that made final disposition of the boundary-line case and also made final disposition of the damage-claim issues was entered on March 5, 2002.

Appellees proceeded under Ark. Code Ann. § 18-60-102 (Supp. 1997) in claiming treble damages. Subsection (a) of the statute provides:

> If any person shall cut down, injure, destroy, or carry away any tree placed or growing for use or shade or any timber, rails, or wood, standing, being, or growing on the land of another person; shall dig up, quarry, or carry away any stone, ground, clay, turf, mold, fruit, or plants; or shall cut down or carry away, any grass, grain, corn, cotton, tobacco, hemp, or flax, in which he has no interest or right, standing or being on any land not his own, or shall wilfully break the glass, or any part of it, in any building not his own, the person so trespassing shall pay the party injured treble the value of the thing so damaged, broken, destroyed, or carried away, with costs.

The trial court stated in its March 5, 2002, order, "The damages awarded are based upon the actual compensatory loss of $675.00 in fencing materials and plants, and were trebled due to the Court's determination that the actions by [appellant] in removing and destroying the plants and fence materials were deliberate, rather than by mistake or error."

Appellant admitted that he removed and destroyed appellees' fence posts, fence wire, and plants without appellees' permission. The fences that appellant destroyed were interior fences around appellees' gardens and not fences on the disputed boundary line. Appellees introduced into evidence a videotape, which showed appellant on different occasions destroying fences, tossing the materials in appellees' pond, and driving his truck over appellees' property. Appellant admitted driving his truck onto appellees' field and making tire ruts in the grass. In addition, he admitted that he drove through appellees' vegetable garden on more than one occasion and destroyed crops in the garden. Based upon the testimony and videotape surveillance presented at trial, the chancellor found that appellant had committed acts specifically prohibited by Ark. Code Ann. § 18-60-102(a). As a consequence,

the trial court awarded appellees treble damages for a total of $2025. We cannot say that the chancellor clearly erred in making his award.

For appellant's final point on appeal, he claims that the trial court erred by awarding appellees $1400 in attorney's fees and costs in the March 5, 2002, order. Appellant argues that appellees are not entitled to recover attorney's fees due to his violation of the injunctions because attorney's fees are not specifically set out by statute to be awarded in property-damage cases. He also contends that his destruction of appellees' property occurred in April of 2001, which was before the injunction was issued on December 3, 2001. Appellant ignores the fact that two previous court orders issued in 1999 and 2000 restrained him from trespassing onto appellees' property. We recognize, however, that the trial court wrongly referenced the December 3, 2001, order as being violated. This misstatement by the trial court is of no moment as appellant violated previous orders issued by the chancellor.

Essentially, the trial court awarded appellees attorney's fees to punish appellant for his wilful disregard of its previous orders. For a person to be held in contempt for violating a court order, that order must be clear and definite as to the duties imposed upon the party, and the directions must be expressed rather than implied. *Wakefield v. Wakefield*, 64 Ark. App. 147, 984 S.W.2d 32 (1998). In cases of civil contempt, the objective is the enforcement of the rights of the private parties to litigation. *Warren v. Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986). Punishment for civil contempt will be upheld by this court unless the trial court's order is arbitrary or against the weight of the evidence. *Dennison v. Mobley, Chancellor*, 257 Ark. 216, 515 S.W.2d 215 (1974). We hold that the trial court's award of attorney's fees in light of appellant's contemptuous actions was not arbitrary or against the weight of the evidence.

Affirmed.

BIRD and VAUGHT, JJ., agree.