JONES TRUCK LINES and Transport Insurance Company *v.*
Wilford PENDERGRASS

CA 04-960                                              206 S.W.3d 272

Court of Appeals of Arkansas
Opinion delivered April 6, 2005

Daggett, Donovan, Perry & Flowers, PLLC, by: Robert J. Donovan, for appellant, Jones Truck Lines.

Jason L. Watson, for appellee.

Davmɪᴅ M. Glover, Judge. Appellee, Wilford Pendergrass, suffered a compensable injury in 1971 while he was working for appellant Jones Truck Lines. This appeal arises from a June 10, 2004 decision of the Workers' Compensation Commission, which affirmed and adopted the ALJ's decision and awarded appellee additional benefits for the injury, concluding that appellee's claim for additional compensation benefits was not barred by the statute of limitations or by the doctrine of laches. We affirm the Commission.

## Background

The facts of this case are essentially undisputed and can be summarized briefly. Appellee began working for Jones Truck Lines in April 1968 as a truck driver, and he worked there until 1989. In December 1971, appellee was helping to unload a crate of plate glass from the trailer of a truck when the crate fell on him and "broke his knee." His injury was compensable and he was treated by an orthopedic surgeon, Dr. Tom Phillip Coker, who performed a lateral meniscectomy on December 1, 1972.

In a December 3, 1973 report, Dr. Coker gave appellee a permanent physical-impairment rating of twenty-five percent to the left lower extremity. He noted that appellee would continue,

to have problems with his left knee, that those problems would increase over time, and that he would probably need a joint replacement. The problems did continue and Dr. Coker replaced appellee's knee joint on December 4, 1974. On February 12, 1976, Dr. Coker assigned appellee a total-impairment rating in the amount of thirty-five percent to the left lower extremity, noting that the life of the arthroplasty was unknown and recommending that appellee continue follow-up care for the rest of his life to determine whether further treatment was necessary.

The ALJ determined that the extent of the follow-up care on appellee after February 1976 was unclear, but that he did return to Dr. Coker on January 2, 1986, for an evaluation and that he saw Dr. Coker's son, Dr. Tom Patrick Coker, on June 16, 2003. The younger Dr. Coker determined on that date that appellee's knee had become loose, and on July 28, 2003, he performed a total knee arthroplasty to repair the prior procedure. Dr. Coker released appellee on October 27, 2003, and in a December 30, 2003 report, he assigned appellee a permanent physical-impairment rating of fifty percent to the left lower extremity.

In 1974, appellee had filed an A-7 form with the Commission requesting compensation benefits. The claim was placed on hold while the parties engaged in settlement negotiations. According to the ALJ's decision, the claim was referred to Commission referees on two occasions for hearings, but the hearings were postponed at the parties' request. The claim was returned to Little Rock and placed on inactive status in 1976.

### Current Claim

In the claim giving rise to this appeal, appellee sought additional medical treatment for his compensable injury, *i.e.*, payment for the surgical procedure performed by the younger Dr. Coker in 2003; payment of temporary-total disability benefits beginning August 4, 2003, through October 27, 2003; permanent-partial disability benefits equal to fifty percent to the left lower extremity; and a controverted attorney's fee.

Appellants raise one point of appeal, but divide it into two subpoints: 1) that appellee's claim was barred by the doctrine of laches, and 2) that the claim was barred by the statute of limitations.

## Standard of Review

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Morales v. Martinez*, 88 Ark. App. 274, 198 S.W.3d 134 (2004). Substantial evidence is that evidence a reasonable person might accept as adequate to support a conclusion. *Id.* A decision of the Commission is reversed only if we are convinced that fair-minded persons with the same facts before them could not reach the conclusion reached by the Commission. *Id.* In our review, we defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. *Id.* The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding. *Williams v. Brown's Sheet Metal/CNA Ins. Co.*, 81 Ark. App. 459, 105 S.W.3d 382 (2003).

## The Doctrine of Laches

In *Summit Mall Co. v. Lemond*, 355 Ark. 190, 206, 132 S.W.3d 725, 735 (2003), our supreme court explained:

> This court has summarized the laches defense by stating that it is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party to seek relief now. The laches defense requires a detrimental change in the position of the one asserting the doctrine, as well as an unreasonable delay by the one asserting his or her rights against whom laches is invoked.

(Citations omitted.) *Laches requires a demonstration of prejudice to the party alleging it as a defense* resulting from a plaintiff's delay in pursuing a claim. *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999) (emphasis added).

Here, the ALJ rejected appellants' laches argument, reasoning:

> After reviewing the evidence in this case, I find that the doctrine of laches is not applicable. Certainly, the passage of time has *somewhat prejudiced* the respondent's ability to defend this claim.

> *However, I do not find that this delay was the result of the claimant having been aware of his rights and failing to assert them. The benefit which claimant is requesting is additional medical treatment relating to the replacement of his knee which did not occur until 2003.* Although claimant had filed a claim for additional compensation benefits in 1974, *this particular issue could not have been litigated at that time.* Furthermore, as previously noted, documentary evidence indicates that respondent was aware that claimant was concerned about his *future medical benefits, that a replacement procedure might be necessary in the future, and that respondent would be responsible for that procedure.* For these reasons, I do not find that the doctrine of laches is applicable to this claim.

(Emphasis added.)

In making their laches argument to this court on appeal, appellants contend that the "Commission erred in concluding that the claimant was unaware of his rights *because his counsel's knowledge was imputed to him as a matter of law.*" (Emphasis added.) They then assert that

> [A]ny knowledge of Attorney Gallman would be imputed to Mr. Pendergrass and *the delivery of the compensation benefits to Mr. Gallman would be the same as delivery to Mr. Pendergrass.* According to the testimony, Mr. Pendergrass knew that Mr. Martin was deceased. Pendergrass also knew that Attorney Gallman had been indicted. In spite of this knowledge, Mr. Pendergrass did not bother to consult with another attorney or to check with the Commission regarding the status of his claim.

(Emphasis added.) These assertions refer to compensation benefits for the 1973 and 1976 impairment ratings. It is clear from the ALJ's discussion, quoted previously, that when he stated, "[h]owever, I do not find that this delay was the result of the claimant having been aware of his rights and failing to assert them," he was not referring in any manner to "the delivery of the compensation benefits to Mr. Gallman," appellee's former attorney. Rather, the ALJ was emphasizing that the additional benefits sought by appellee were for the replacement of his knee, which did not occur until 2003, and that this particular issue could not have been litigated in 1974. Moreover, the ALJ noted that there had always been a concern that a replacement procedure might be necessary in the future. Consequently, appellants' argument based upon the imputation of an attorney's knowledge to his client is misplaced.

■ Moreover, it is clear from the cases discussing laches that the party asserting it must demonstrate how it was prejudiced by the delay. Even though the ALJ acknowledged that appellants were "somewhat" prejudiced, there was not a sufficient level of prejudice demonstrated below to convince us that fair-minded persons with the same facts before them could not reach the conclusion reached by the Commission. Under the circumstances of this case, therefore, we find that the Commission's decision that appellee's claim was not barred by the doctrine of laches is supported by substantial evidence.

### The Statute of Limitations

Arkansas Statutes Annotated section 81-1318(b) (Cum. Supp. 1971) is the applicable statute, and it provides in pertinent part:

> (b) Additional compensation. In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the Commission within one [1] year from the date of the last payment of compensation, or two [2] years from the date of the injury, whichever is greater. The time limitations of this subsection shall not apply to claims for replacement of medicine, crutches, artificial limbs and other apparatus permanently or indefinitely required as the result of a compensable injury, where the employer or carrier previously furnished such medical supplies.

(Brackets in original; now codified at Ark. Code Ann. § 11-9-702 (Repl. 2002).) Moreover, the timely filing of a claim for additional benefits tolls the statute of limitations until the claim is decided. *Arkansas Power & Light Co. v. Giles*, 20 Ark. App. 154, 725 S.W.2d 583 (1987). *See also Spencer v. Stone Container Corp.*, 72 Ark. App. 450, 38 S.W.3d 909 (2001).

The Commission, in adopting the ALJ's opinion, found that appellee filed a timely claim for additional benefits in 1974; that a hearing was never conducted on appellee's request for additional benefits; that the claim was placed on inactive status; and that there has never been a final order ending the litigation or adjudicating the 1974 claim. The Commission concluded that the 1974 claim tolled the statute of limitations, that it did not begin to run again because there was no final order ending the litigation or adjudi-

cating the claim for additional benefits, and that therefore the instant claim was not barred by the statute of limitations.

In addition, the Commission gave a second reason for finding that appellee's claim for additional benefits was not barred by the statute of limitations, quoting the following portion of Arkansas Statutes Annotated section 81-1318(b):

> The time limitations of this subsection *shall not apply to claims for replacement of* medicine, crutches, artificial limbs and *other apparatus permanently or indefinitely required as the result of a compensable injury,* where the employer or carrier previously furnished such medical supplies.

(Emphasis added.) The opinion explained that the July 2003 procedure by the younger Dr. Coker was to repair and replace the prior arthroplasty that had been inserted by his father during a surgical procedure in 1974; that the artificial knee joint was an apparatus that was permanently or indefinitely required as a result of the compensable injury; and that even if claimant's January 1974 claim did not toll the statute of limitations, the limitations statute would not apply to replacement of the knee joint pursuant to Arkansas Statutes Annotated section 81-1318(b).

In making their argument to this court, appellants quote Arkansas Statutes Annotated section 81-1318(b), previously quoted in this opinion, and then contend:

> The above quoted portion of the Statute of Limitations consists of two sentences. The first sentence states the period of limitation without exception. The second sentence provides an exception relative to the replacement of certain items. However, the exception does not mention temporary total disability benefits, or permanent partial disability benefits arising beyond the limitation period even if related to replacement of items. It would have been a very simple matter for the legislature to have included disability benefits occurring as a result of replacement of prosthesis if that had been their intention.

That is the full extent of their argument on appeal, and it is limited to a contention that the second-sentence exception to the statute of limitations for replacement parts does not include temporary-total disability benefits and permanent-partial disability benefits even if they are related to the replacement of items. We do not address this sub-point for two reasons.

■ First, appellants cite no legal authority for their position and their argument is not otherwise convincing. Assignments of error that are unsupported by convincing authority will not be considered. *Gwin v. Daniels*, 357 Ark. 623, 184 S.W.3d 28 (2004).

■ Second, the ALJ gave two bases for deciding that appellee's claim was not barred by the statute of limitations: 1) that the statute of limitations was tolled by the 1974 claim, 2) that the knee replacement fell within the exception to the statute of limitations. Appellants make no argument with respect to the ALJ's decision on the tolling of the statute of limitations. Consequently, it is also unnecessary to consider this sub-point because the other basis given by the ALJ would still stand. *See, e.g., Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989) (where trial court expressly based its decision on two independent grounds and appellant challenged only one on appeal, the appellate court affirmed without addressing either).

Affirmed.

BIRD and ROAF, JJ., agree.