Mary & Alan DANIEL *v.* CITY OF ASHDOWN, Arkansas

CA 05-424                                    232 S.W.3d 511

Court of Appeals of Arkansas
Opinion delivered March 15, 2006

*Thomas H. Johnson*, for appellant.

*Jay P. Metzger*, for appellee.

ANDREE LAYTON ROAF, Judge. In 2002, appellants Mary and Alan Daniel filed suit against appellee City of Ashdown, claiming that the city had taken their property by inverse condemnation.[1] The City of Ashdown filed a counter-claim to quiet title to the property. The trial court ruled that the Daniels' claim was barred by the statute of limitations and that the City of Ashdown was entitled to the property, quieting title against the Daniels. On appeal, the Daniels argue that the trial court erred when it held that their inverse condemnation claim was barred. We affirm.

In May 1993, Mary Daniel inherited approximately two and one-half acres of property located in Little River County, Arkansas, which is the subject of this appeal. She received a fiduciary deed for this property from the estate of Clora Carlstead Wall. Since 1954, the City of Ashdown has owned ten acres of property adjacent to the property at issue ("disputed portion"), which the city has been using as a dump or landfill facility.

Silas Robbins testified that he remembered going to the disputed portion with his father in the 1950s to dump trash and other debris. He further testified that he began a trash-hauling business in 1974 and that he would bring trash to the disputed portion for dumping. According to Robbins, the dump closed some time in the 1980s, but the city continued to maintain and control the disputed portion.

Wayne Reed, the mayor of Ashdown at the time of the trial, testified that he was working for the City of Ashdown in 1974 and that one of his duties as a city employee was to cut brush, haul it to the disputed portion, and dump it. According to Reed, the City of Ashdown has maintained exclusive control of the disputed portion since at least 1974. Roy Staggs, who was mayor of Ashdown from 1975 until 1980, testified that he moved to Ashdown in 1966 and

---

[1] This is the third lawsuit the Daniels have filed regarding this property. In 1998, the Daniels took a non-suit in state court. The Daniels filed another complaint in federal court, which was dismissed for lack of subject-matter jurisdiction.

that he remembered people carrying their trash to the disputed portion for dumping. According to Staggs, the City of Ashdown had maintained and controlled the disputed portion since he moved to Ashdown.

Wayne Francis, the superintendent for Ashdown's water department from June 1994 until September 2003, testified that he had lived in Ashdown since he was a child and remembered the disputed portion as a city dump. According to Francis, the City of Ashdown began bringing fill material upon the disputed portion prior to his employment with the city. This project, however, continued throughout his employment with the city for the purpose of filling in a gully. The City of Ashdown also laid a sewer line on the property. Francis testified that, when the city dug up the property to bury the sewer line, it uncovered debris. Francis further testified that it was not until March 1998 that the City of Ashdown realized that the ownership of the disputed portion was contested.

Barbara Hersom, the Little River County Assessor from 1975 until 2000, testified that she was familiar with the City's use of the disputed portion while she was the assessor. An independent appraisal group hired to reassess county property in 1980 recommended that Hersom remove the disputed portion from the property tax rolls of the Carlsteads, who were the Daniels' predecessors-in-title, and show that the disputed portion was owned by the City of Ashdown. In Hersom's opinion, it was unfair for the Carlsteads to pay taxes on property that had been used by the City of Ashdown for a dump for many years. After 1980, neither the Carlsteads nor the Daniels ever paid property taxes on the disputed property.

Mary Daniel testified that Mrs. Carlstead referred to the disputed portion as her own prior to her death in 1991, and that in 1998, Mary and her husband Alan had complained to Mayor Hoyt Johnson about the city trespassing on the disputed portion. She testified that they had never paid taxes on the disputed portion but that they had tried to several times. According to Mary, when the city ignored them and continued to use the disputed portion, Alan put a lock on the gate along the entrance to the disputed portion. The City of Ashdown cut the gate and continued to enter onto the disputed portion. Mary Daniel testified that she had had the disputed portion mortgaged with Commercial Bank since 1994. According to Mary Daniel, the City of Ashdown never paid her any money for the disputed portion.

Alan Daniel testified that the City of Ashdown damaged the disputed portion by dumping trash and other waste on it. According to Alan, when he or his wife would complain about the dumping, the city would bulldoze the waste back onto its own property. He testified that they had never paid taxes on the disputed portion. He further testified that he knew the city had been regularly entering the disputed portion and dumping on it since 1993.

The Daniels do not articulate or analyze specifically why the trial court erred in finding that their inverse condemnation claim was barred by the statute of limitations. They devote much of their brief to discussing the unconstitutionality of a government taking of property without just compensation, but they fail to further allege any specific errors. Here, the trial court held that the Daniels' inverse condemnation claim was barred by the statute of limitations. The Daniels argue that this holding is erroneous.

Chancery cases are reviewed *de novo* on the record, but the appellate court does not reverse unless it determines that the lower court's findings of fact were clearly erroneous. *Schrader v. Schrader*, 81 Ark. App. 343, 101 S.W.3d 873 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite conviction that a mistake was committed. *Id.*

Inverse condemnation is a remedy for the physical taking of private property without following eminent domain procedures. *Nat'l By-Products, Inc. v. City of Little Rock*, 323 Ark. 619, 916 S.W.2d 745 (1996) (citing *Robinson v. City of Ashdown*, 301 Ark. 226, 783 S.W.2d 53 (1990)). A taking occurs when a condemnor acts in a manner that substantially diminishes the value of a landowner's land, and a continuing trespass or nuisance could ripen into inverse condemnation. *Id.*

Arkansas Code Annotated section 18-15-410(a) (Repl. 2003) provides:

> If a municipality shall enter upon property which it has the right to acquire by condemnation proceedings without commencing condemnation proceedings, the owner of the property shall have the right to commence condemnation proceedings against the municipality *at any time before an action for the recovery of the property or compensation therefore would be barred by the statute of limitations.*

(Emphasis added.) Arkansas law defines the statute of limitations for actions to recover land as follows: "No person . . . shall have, sue, or

maintain any action or suit, either in law or equity, for any lands . . . after seven (7) years once his or her right to commence, have, or maintain the suit shall have come, fallen, or accrued." Ark. Code Ann. § 16-61-101(a)(1) (Repl. 2003). All suits for the recovery of any lands shall be had and sued within seven years after the title or cause of action accrued. Ark. Code Ann. § 16-61-101(a)(2).

The Arkansas Supreme Court held that an injured landowner's claim for land taken by a railroad company was barred, where the evidence showed that the railroad company had been in adverse possession for more than seven years. *Memphis & L.R.R. Co. v. Organ*, 67 Ark. 84, 55 S.W. 952 (1899). Since this 1899 case, our supreme court has consistently upheld the seven-year statute of limitations for inverse condemnation actions, holding that a landowner has a right to bring suit for compensation of land within the period of seven years after the land was taken. *Bryant v. Lemmons*, 269 Ark. 5, 598 S.W.2d 79 (1980); *Sebastian Lake Devs., Inc. v. United Tel. Co.*, 240 Ark. 76, 398 S.W.2d 208 (1966).

The Daniels suggest that the statute of limitation did not begin to run until 1998, because city personnel believed that the property belonged to the city until at least 1998, when Francis discovered the deed granting the property to the Daniels. Possession alone does not ripen into ownership, but the possession must be adverse to the true owner. *Thompson v. Fischer*, 364 Ark. 380, 220 S.W.3d 622 (2005). To establish ownership by adverse possession, one must show that the possession was actual, open, notorious, continuous, hostile, and exclusive.[2] *Id.* It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Trice v. Trice*, 91 Ark. App. 309, 210 S.W.3d 147 (2005). The Daniels suggest that the element of intent to hold against the true owner is missing here.

██ An adverse claimant does not necessarily have to possess knowledge that the claimed land is not his; rather, the

---

[2] In 1995, the law governing adverse possession changed, requiring one to show color of title and payment of taxes in addition to all of the elements necessary under previously existing adverse possession case law. Ark. Code Ann. § 18-11-106 (Supp. 2005). The statutory changes made in 1995 do not apply to property owners whose rights to the disputed land had vested prior to that time. *Schrader v. Schrader*, 81 Ark. App. 343, 101 S.W.3d 873 (2003).

claimant's subjective intent to claim the land that he is possessing is derived from his objective conduct. *Dickson v. Young,* 79 Ark. App. 241, 85 S.W.3d 924 (2002). It is this objective conduct that is determinative. *Id.* Here, there was testimony that the City of Ashdown has maintained the disputed portion as its own since the 1950s. It used the disputed portion for a city dump, built a fence on the property, and exercised exclusive control over the land as if it were the owner. This objective conduct is sufficient to derive intent to possess adversely. Moreover, the Daniels had never paid taxes on the property. The City of Ashdown acquired the disputed portion by adverse possession at some time before the Daniels received the fiduciary deed to the disputed portion in 1993. Neither the Daniels nor their predecessors-in-title commenced suit against the City of Ashdown within seven years after the cause of action accrued. The trial court, therefore, did not err when it held that the Daniels' inverse condemnation claim was barred by the statute of limitations and when it quieted title of the disputed portion in the City of Ashdown.

The Daniels also devote one sentence in their brief to an assertion that the trial court should have awarded the City of Ashdown an easement in the disputed property and should not have awarded it the entire two and one-half acres of property. The Daniels, however, do not cite any authority in support of this argument and the argument is not otherwise convincing. Thus, this court need not address the argument. *See Jones Truck Lines v. Pendergrass,* 90 Ark. App. 402, 206 S.W.3d 272 (2005).

Affirmed.

HART and VAUGHT, JJ., agree.