Cite as 2025 Ark. App. 482

# ARKANSAS COURT OF APPEALS
### DIVISION IV
No. CV-24-555

|  |  |
|---|---|
| JAMES L. RICHESON, JR.<br><div align="right">APPELLANT</div><br>V.<br><br>RONALD L. ELKINS<br><div align="right">APPELLEE</div> | Opinion Delivered October 22, 2025<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17CV-21-372]<br><br>HONORABLE CANDICE A. SETTLE, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This case stems from a dispute between neighbors regarding trees that were allegedly removed from Richeson's property without his consent while constructing a boundary fence. The Crawford County Circuit Court dismissed Richeson's complaint with prejudice. Richeson argues on appeal that the circuit court clearly erred in determining that he consented to the removal of his trees. We affirm.

## I. *Background*

In 2019, Roland Elkins purchased a five-acre lot from James Richeson, Jr., who owned a bordering lot. In 2020, Elkins sought to build a fence to keep his and Richeson's cattle separated. Richeson consented to Elkins's building the fence and even provided some wire for the fence. In mid-July Elkins began clearing the land and building the fence. The fence

was completed in the first week of August2020. Neither party disputes that the fence marks the boundary line of the properties.

Richeson filed a cross-complaint in an unrelated action[1] against Elkins for allegedly removing at least fifty trees without Richeson's consent. A bench trial was held on May 9, 2024, on Richeson's cross-complaint. At the bench trial, a number of witnesses testified. Richeson first called Elkins to testify. Elkins testified that he purchased the property in 2019 and that beginning in mid-July 2020 until the first week of August 2020, he put up a fence between his and Richeson's property so that his cattle could graze without intermingling with Richeson's cattle. He ran a line of nylon cord along the surveyor's markers to make sure the fence was properly placed. Elkins testified that he never removed any trees from Richeson's side of the fence, nor did he bulldoze Richeson's side of the fence. He further testified that he did not believe any of the trees he had cut down were of value. Elkins attested that his pictures were taken in October 2020; one of the pictures had the date "2020/10/18" printed on it. On re-call, Elkins conceded that he never counted the trees in the brush pile.

Testifying for Richeson, Ben Atwell and TJ Hamilton testified as to the value of the trees removed from the property. Both Atwell and Hamilton testified that their estimates were initiated at least a year and a half after the trees had been removed. Their estimates were based on a pile of trees on Elkins's side of the fence—viewed from at least twenty-five

---

[1]On August 21, 2021, Linda Christiansen filed a complaint to establish an easement against Richeson and Elkins. It is from this case that Richeson filed his cross-complaint. Linda Christiansen is not a party to this appeal.

feet away. Atwell estimated that it would cost $172,000 to replant new trees. Hamilton estimated that it would cost roughly $250,000 to replant new trees. Neither Atwell nor Hamilton had ever completed a job like the one estimated.

Additionally, Richeson had friends and neighbors testify about the change in the property. Cherylene Charves testified that the area used to be very wooded and also that there had always been a fence there. Clay Lewis testified that he remembered the area being "fuller" before Elkins purchased the neighboring lot. Kenny Shelton testified that he had not been on the property since Elkins had purchased it, and he thought that maybe a tornado had taken out the trees on Richeson's property.

Finally, Richeson himself testified and conceded that he consented to the construction of the fence, that he took some wire and placed it right over the property line on Elkins's property, and that all the trees in the brush pile were not from his property. Richeson further alleged that he could not say how many trees or what kind of trees were removed from his property:

Q: Do you know how many trees that existed there that are no longer there?

A: I do not. There were several . . . I cannot give you an exact number.

Richeson testified that the photographs he took of the property were taken over two years after the trees were removed, and he eventually conceded that he had a bulldozer on his side of the fence after seeing the photograph of the bulldozer there.

Mary Elkins, Elkins's wife, testified that she was there with her husband while he did most of the work and that he never removed a tree from Richeson's side of the fence. She

further testified that Richeson had moved the cars and objects to the fence border before the fence was placed.

Following all the testimony, the circuit court ruled from the bench, finding in favor of Elkins. Specifically, the circuit court held as follows:

> Well, I feel like what everyone's overlooked here is that there was consent to put up a fence on this property. Mr. Richeson—Richeson testified that he brought fencing over for them to use to build the—the fence on that property line. I'm not sure how you could build a fence directly on a property line without anticipating that there might be some trespass, if you will, onto the other person's property. I think that it was anticipated that there was going to be some shrub, perhaps some trees removed in order to put a fence up through there, based upon Mr. Richeson's statement and testimony that we would've had to remove some trees to put a fence up there. And so I—I just—I think that it—it was contemplated that there were—that Mr. Elkins was going to be on the property, that it would be necessary to remove some brush or—or even trees in order to put that fence up. I also think that it's absolutely absurd to come in here and ask for 50 trees to be replaced based upon clear pictures that were established in 2019 and Plaintiff's Exhibit #1.

> However, I do think, and I—I—I understand Mr. Richeson that your view has probably changed there. There were a lot of trees that were removed from Mr. Elkins' property that it—very plainly. And that did change the look of that. But I don't think that the—but I don't think that we've established that he came onto the property without your consent and moved any—anything there without you being aware of it. And then for, you know, two—over two years, nothing said about the trees.

On May 13, 2024, the circuit court issued a written order reiterating its holding that Richeson consented to the building of the fence and that such consent would naturally include the removal of trees and brush in the area. This appeal followed.

4

## II.  *Standard of Review*

Following a bench trial, we determine whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence, and we review the circuit court's conclusions of law de novo. *Gunn v. Wortman*, 2024 Ark. App. 111, at 6, 684 S.W.3d 340, 343–44. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with a firm conviction that a mistake has been made. *Id.* We view the evidence and all reasonable inferences arising therefrom in the light most favorable to the appellee. *AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, at 6, 602 S.W.3d 726, 730. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Rymor Builders, Inc. v. Tanglewood Plumbing Co., Inc.*, 100 Ark. App. 141, 147, 265 S.W.3d 151, 155 (2007). We give recognition to the circuit court's superior opportunity to determine the credibility of witnesses and the weight to be given to their testimony. *Gunn*, 2024 Ark. App. 111, at 6, 684 S.W.3d at 344; *see also Mays v. Viva La Vegan Grocery, Inc.*, 2024 Ark. App. 513, at 2–3, 700 S.W.3d 750, 758–59.

## III.  *Discussion*

Richeson alleges on appeal that the circuit court erred in finding that he had given consent to remove the trees from his property. Citing no case law, he makes purely factual arguments to support his claim.

Richeson testified at trial that it was clear that some trees and brush would need to be removed in order to place the fence on the boundary line. Furthermore, Elkins testified that Richeson brought the wire to help build the fence on Elkins's property on the boundary

5

line. Richeson understood that the fence was going on the boundary line, and by his own testimony, he understood that putting a fence there would require removal of the trees in the area. Yet, with this knowledge, Richeson did not contact Elkins and request that he not bulldoze the trees and the brush on Richeson's property. As Elkins cleared the area over the course of two weeks, Richeson did not tell Elkins to leave the trees. In fact, Richeson did not mention any issue with the alleged tree removal for two years until an entirely separate case arose.

Moreover, Richeson misstates the circuit court's order. Although the circuit court's reasoning relies on Richeson's consent to build the fence, it did not hold that Elkins had removed any trees from Richeson's property. Rather, the circuit court held that it would have been "anticipated or contemplated that it would have been necessary to remove trees or brush in order to carry out and complete construction of the fence." And while Richeson argues in his reply brief that the circuit court acknowledged that the view from Richeson's home had changed, he fails to note that the circuit court found that the view was different because Elkins removed trees *from his own property*. At no point does the circuit court find that the view was altered due to Elkins removing trees from *Richeson's side* of the fence. Furthermore, the circuit court went on to hold, "I don't think that we've established that he came onto the property without your consent and moved any—anything there without you being aware of it."

The circuit court was in the best position to determine the credibility of the parties and the witnesses at trial, and it clearly found that Richeson and his witnesses were not fully

credible in their testimony. *Gadberry v. Gadberry*, 2023 Ark. App. 398, at 28. This is particularly clear in the following statement by the circuit court: "I also think that it's absolutely absurd to come in here and ask for 50 trees to be replaced based upon clear pictures that were established in 2019 and Plaintiff's Exhibit #1." Richeson requests that we reweigh the evidence and give his witnesses the credibility that the circuit court did not. This we will not do. *Hamerlinck v. Hamerlinck*, 2022 Ark. App. 89, 641 S.W.3d 659.

Finally, Richeson cites *Fleece v. Kankey*, 77 Ark. App. 88, 92, 72 S.W.3d 879, 882 (2002), for the notion that *express* consent is required to remove trees from a boundary line. In *Fleece* this court noted that in most jurisdictions, "owners of boundary line trees are considered tenants in common, and neither tenant possesses the right to destroy the commonly held property without consent of the other." 77 Ark. App. at 92, 72 S.W.3d at 882 (citing *Holmberg v. Bergin*, 172 N.W.2d 739 (Minn. 1969); *Ridge v. Blaha*, 520 N.E.2d 980 (Ill. App. Ct. 1988)). This statement, however, had no bearing on the court's holding— that the circuit court erred in looking only at market value of the lost trees to determine value. "Where a discussion or comment in an opinion is not necessary to the decision reached therein, the discussion or comment is obiter dictum." *Clemmons v. Off. of Child Support Enf't*, 345 Ark. 330, 348, 47 S.W.3d 227, 238 (2001). Furthermore, even if it were not dictum, *Fleece* does not, at any point, hold or find that *express* consent is required to remove trees from a boundary line. Accordingly, Richeson's reliance on *Fleece* is misplaced. It was not clearly erroneous for the circuit court to find that Richeson had impliedly

consented to the removal of any trees from his property during the construction of the fence in question.

## IV. *Conclusion*

Here, for the reasons stated, we cannot say that the circuit court clearly erred in finding that Richeson had consented to the removal of trees from his property. Accordingly, we affirm.

Affirmed.

VIRDEN and TUCKER, JJ., agree.

*Edwin G. Dooley, Jr.*, for appellant.

*Medlock & Gramlich, LLP*, by: *David L. Borland*, for appellee.